**UNITED STATES of America**

v.

**John N. MITCHELL et al., Defendants.**

**Crim. No. 74–110.**

United States District Court,
District of Columbia.

Nov. 14, 1974.

Watergate Special Prosecution Force, Washington, D. C., James F. Neal, Associate Sp. Prosecutor, Jill Wine Volner, Peter A. Rient, Richard Ben-Veniste, George T. Frampton, Jr., Asst. Sp. Prosecutors, for plaintiff.

William S. Frates, Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, Fla., for defendant John D. Ehrlichman.

### OPINION

SIRICA, District Judge.

This matter comes before the Court on the proffer by the government of testimony by Fred Fielding concerning certain statements made to him by a previous government witness, John Dean, and the objection interposed by counsel for defendant John Ehrlichman to such testimony.

This question initially arose on Tuesday, November 5, 1974, when the government proposed to call Mr. Fielding to testify in order to rehabilitate Mr.

Dean. Mr. Ehrlichman's attorney vigorously objected and argued that such testimony would be "rank hearsay," and that it was clearly inadmissible in this case. The government's counsel offered to orally cite cases to support what he intended to do, but no explanatory memorandum had been submitted, and on the basis of the oral argument the objection was sustained. (Trans. 5388–5391.)

Since then the government has submitted memoranda specifically explaining the purpose for which Mr. Fielding will be called and citing legal authority to support this procedure. Likewise, counsel for Mr. Ehrlichman has submitted a memorandum setting forth the arguments and authorities in opposition to the admissibility of such testimony.

On direct examination, Mr. Dean testified to a conversation he had with defendant Ehrlichman on June 21, 1972. According to Dean, he was told by Mr. Ehrlichman at that time to "deep six" a briefcase containing electronic gear which had been found in the safe of E. Howard Hunt, but that he rejected this suggestion and subsequently persuaded Ehrlichman that it should be turned over to the F.B.I.

On cross-examination of Dean, counsel for Ehrlichman attempted to show that Dean's testimony about this episode was untrue. For example, Mr. Frates attempted to show that Dean knew the meaning of the term "deep six" without having to have Ehrlichman explain it to him. And in his opening statement, Mr. Frates asserted that the proof would refute the government's assertion that Ehrlichman had instructed Dean to "deep six" material from Hunt's safe and that Dean's credibility in this respect was suspect since he was "hard-bargaining for immunity" when he first accused Ehrlichman to the original prosecutors.

In order to refute the suggestion made by Mr. Frates that Dean's incriminating testimony was fabricated at a time when Dean was bargaining for immunity and was, therefore, motivated to lie about the involvement of "higher-ups," the government wants to introduce testimony from Fred Fielding to the effect that on or about June 21, 1972, Dean told him of Ehrlichman's instruction to "deep six" the evidence, and that Dean expressed concern about the wisdom of doing so.

The testimony of Mr. Fielding is offered by the government solely for the purpose of rebutting the suggestion that Dean's "deep six" testimony was untrue and to assist the factfinders in assessing his credibility.

Mr. Ehrlichman's counsel objects, contending that a distinction must be made between testimony offered to rehabilitate an impeached witness, and testimony offered to corroborate his testimony. He claims that impeachment of a witness gives rise to rehabilitation when the impeachment goes not to the truthfulness of the witness' *testimony*, but to the *character or reputation* of the witness for veracity. He also contends that Dean's out-of-court statement to Fielding that Ehrlichman told him to "deep six" the briefcase is offered for the truth of the contents of the statement, and is inadmissible hearsay. Mr. Frates maintains that the testimony is sought to corroborate Dean's testimony, and not to rehabilitate Dean's reputation.

Furthermore, he contends that when Dean made the alleged remark to Fielding, Dean was actively involved in the cover-up, and had a strong motive to falsify his remark to Mr. Fielding. Dean is alleged to have made other false statements during the same period of time that were attended by the same motivation. [Just what motive Dean had for lying to Mr. Fielding at that time is not made clear, however.] Mr. Ehrlichman also asserts that since Dean has admitted that he lied on several occasions, it is impossible to rehabilitate his reputation for veracity.

Rehabilitation evidence is allowed only when there is a need to rehabilitate. As both WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1957) and BLACK'S LAW DICTIONARY (4th ed. 1951) indicate, "rehabilitate" means: "To invest or

clothe again with some right, authority, or dignity; to restore to a former capacity; to reinstate; to qualify again."

■ It is thus essential that before one can rehabilitate, there must first have been an impeachment, a taking-away of dignity, a disqualification. And it is necessary that the proposed rehabilitation evidence be directed at the particular impeachment that occurred.

If the only reasons for allowing Fielding to testify about a prior consistent statement of Dean were the two reasons particularized in the government's memoranda (Mr. Frates' remark in his opening statement, and his reference on cross-examination to Dean's sailing experience) there would be good reason to agree with Mr. Ehrlichman's objection.

■ A remark in Mr. Frates' opening statement that he would refute the government's assertion that Ehrlichman told Dean to "deep six" the briefcase would not be enough, standing alone, to constitute a substantial impeachment of the later testimony of Dean, especially in this trial when the opening statements were all so very long, and Dean's testimony was so lengthy.

■ Nor would the fact that Mr. Frates briefly noted in his cross-examination of the witness Dean that the witness had once owned a sailboat, constitute a substantial impeachment of Dean's testimony that it was Ehrlichman, not he, who suggested that the evidence be "deep sixed." This reference to Dean's knowledge of nautical terms was brief (he was cut off by the Court), very subtle (it is possible that some jurors did not realize that the question implied that Dean had originated that term), and of minimal impeachment value (when compared with the weight and detail of the accusations made by Mr. Dean).

■ But a review of the transcript of Mr. Frates' entire cross-examination and re-cross-examination of the witness Dean supplies ample reason for admitting the prior consistent statement. (Trans. at 3662–3782 and 3839–3850.) During his cross-examination, Mr. Frates (1) stress-ed that the witness had hidden, concealed, and destroyed evidence and directed others to do the same; (2) emphasized that the witness had committed perjury, suborned perjury, taken advantage of others less knowledgable than himself, and had misused his legal abilities; (3) tried to show the witness had altered his testimony since he had first been interviewed by prosecutors; (4) impugned his honesty with regard to money Dean used which did not belong to him, implying that no I.O.U. check had been written to cover the money used; (5) implied the witness was not as opposed to the Liddy plan as he had suggested he was; (6) implied that the witness had omitted certain facts from his testimony for self-serving reasons; (7) implied that the words which the witness had ascribed to some defendants were actually the witness' own words; and *most importantly*, (8) directly raised the issue of "bargaining for immunity" to imply that the witness had a motive for implicating some of the defendants who were more notable public figures than himself, in order to get favored treatment. (Trans. at 3739–3740.)

In other words, defendant Ehrlichman, through his attorney, made a substantial, sustained attack on the credibility of the witness. Not only in the opening statement of Mr. Frates but also in his cross-examination he raised the issue that Dean's testimony was suspect because it was first given when he was "hard-bargaining for immunity."

Because Mr. Ehrlichman opened the door on cross-examination, the government should be allowed to call a witness who can allegedly testify that *before* Mr. Dean was bargaining for immunity, long before he had the motive suggested by Mr. Ehrlichman for fabricating his testimony, Mr. Dean made a prior consistent statement.

The present situation is quite similar to the situations in several cases cited in the government's memorandum. In United States v. Zito, 467 F.2d 1401 (2d Cir. 1972) the two appellants had been convicted of conspiracy to extort. At

trial the victim of a loan-sharking scheme, Mr. Doran, was called to testify about a loan, interest rates, threats, etc. Several other witnesses testified about statements Mr. Doran had made to them which paralleled his trial testimony about threats, etc.

The appellants asserted that this supportive testimony was inadmissible as mere corroborative testimony, but the trial court was upheld by the Court of Appeals which noted:

> The defense attorney's opening statement to the jury and his persistent inquiries during the cross-examination reflected an intense interest in the fact that Doran had committed many crimes in his attempts to raise money for the Zitos [defendants] for which he had not been indicted. In this manner 'the defense at least suggested to the jury that [the prosecution's principal witness] hoped for clemency for himself, and that his trial testimony was a fabrication, as a reward for which he hoped to go unwhipped of justice.' . . . A trial judge normally has great discretion in determining if a prior consistent statement is authorized to rebut a defense charge of recent fabrication, . . . and we cannot say here, in light of the obvious motive to falsify, that the trial judge erred in drawing the inference that the defense had suggested that Doran had concocted his story to escape punishment. *Id.* at 1404 (citations omitted).

Similarly, in United States v. DiLorenzo, 429 F.2d 216 (2d Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971), in appealing his conviction for interstate transportation of stolen securities and conspiracy, the appellant urged that it was error to allow into evidence testimony of a witness about a prior statement of a government witness. After the witness had testified that the appellant was his source of the stolen securities:

> [T]he defense sought to impeach his credibility by showing that by his helpful testimony he was seeking leniency from the government in the pending sentencing on his conviction. In such a case, prior consistent statements may be used to rehabilitate a witness where under the circumstances it will be reasonably possible for the jury to say that the prior consistent statement did in fact antedate the motive disclosed on cross-examination. . . . The testimony was properly allowed into evidence, and the trial judge gave instruction limiting its purpose to the fact that the statement was made and not for the truth of the statement. *Id.*, 429 F.2d at 220.

See also United States v. Rodriguez, 452 F.2d 1146 (9th Cir. 1972); United States v. DeLaMotte, 434 F.2d 289 (2d Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971).

Furthermore, Volume IV WIGMORE ON EVIDENCE (Chadbourn rev. 1972) includes a section on this topic. Section 1128 indicates:

> A consistent statement, at a *time prior* to the existence of a fact said to indicate bias, interest, or corruption, will effectively explain away the force of the impeaching evidence . . . . The former statements are therefore admissible. *Id.* at 268. (Italics in original.)

Therefore, it is this 14th day of November, 1974, by the Court

Ordered that defendant John Ehrlichman's objection to the admissibility of the testimony of Mr. Fred Fielding concerning a prior consistent statement made by John Dean be, and the same hereby is, overruled; and it is further

Ordered that the government submit to the Court prior to the appearance of Mr. Fielding a proposed instruction concerning the limited purpose for which his testimony may be received.