**Haywood F. WILBURN, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8210.**

District of Columbia Court of Appeals.

Argued May 8, 1975.

Decided July 3, 1975.

---

Louis M. Seidman, Washington, D. C., for appellant. Frederick H. Weisberg, Washington, D. C., appointed by this court, and Frank Petramalo, Jr., Washington, D. C., also entered appearances for appellant.

Jeffrey T. Demerath, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Daniel J. Bernstein, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and NE-BEKER, Associate Judges.

FICKLING, Associate Judge.

After a jury trial, appellant was found guilty of rape in violation of D.C.Code 1973, § 22–2801. The principal issues on appeal are: (1) whether the trial court abused its discretion by not excusing a juror after the court learned that the juror knew a key government witness; and (2) whether the trial court erred by refusing

to conduct a "Jencks"[1] hearing before a government witness on cross-examination was asked if he recorded any statement by the complainant. We reverse.

At the beginning of the trial, there was some confusion as to which courtroom would be used. As a result, during voir dire the potential government witnesses were not present and the jurors, before they were empanelled, did not have an opportunity to see the witnesses. The jurors were supplied the witnesses' names and addresses, but none of the jurors recognized any of them.[2]

During the trial however, as soon as Mr. Fred Brown, complainant's boyfriend, took the stand to testify, a juror, Miss Emma Saunders, informed the court that she knew him. The trial judge, in response to defense counsel's request that the juror be excused, said he would defer any action at that time but stated that he would substitute the alternate juror for Miss Saunders at the conclusion of the trial.

The next day, however, another juror was forced to discontinue her service on the panel because of an ankle injury. The court then conducted an inquiry into Miss Saunders' relationship with Brown, at which time she revealed that she had been a personal friend of his mother for some 30 years although she had not seen her in 5 or 6 years.[3] In addition, she said that she had known Fred Brown since he was a boy but had not seen him in several years. During the inquiry, Miss Saunders stated that she believed she could be an impartial juror. The court denied the defense's motion to excuse the juror and the trial continued. Ultimately, the appellant was convicted.

■ A trial judge, of course, has broad discretion in deciding whether to excuse a juror for cause. *United States v.*

*Grant*, 494 F.2d 120 (2d Cir. 1974); *Lyda v. United States*, 321 F.2d 788, 791 (9th Cir. 1963). In addition, an appellate court should not reverse the trial judge's decision on this matter unless the juror's partiality is manifest. *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

■ Impartiality, however, is a state of mind and cannot be measured on the basis of any technical formula. *Irvin v. Dowd, supra* at 724, 81 S.Ct. 1639. The juror's belief that she could be impartial is not controlling; rather, the court must analyze all the circumstances of the juror's relationship with the witness before it decides that she can be impartial. *Irvin v. Dowd, supra* at 724–28, 81 S.Ct. 1639; *State v. Jackson*, 43 N.J. 148, 203 A.2d 1 (1964). "Only by a punctilious regard for a suspicion of prejudice can we hope to maintain the high traditions of our jury system. We must make sure that the lamentations of the unsuccessful litigant is without foundation, either in fact or circumstance." *United States v. Chapman*, 158 F.2d 417, 421 (10th Cir. 1946).

■ Here, the juror and the government witness were more than mere acquaintances. The juror had been a personal friend of the witness' mother for thirty years and had known the witness as he was growing up. Equally significant is the fact that Brown's credibility was crucial to the government's case. His testimony corroborated the fact that the complainant reported the incident immediately, and his testimony that she was very emotional when he saw her after the incident also supported her version of the events. If Miss Saunders, in assessing Brown's credibility, relied upon facts that she had learned through her prior relationship with him or his mother, then the appellant would be denied a fair trial. "[A juror's]

---

1. Jencks Act, 18 U.S.C. § 3500 (1970).

2. Twelve regular jurors and one alternate were empanelled.

3. The complainant was living with Fred Brown and his mother at the time of the rape.

verdict must be based upon the evidence developed at the trial." *Irvin v. Dowd, supra* 366 U.S. at 722, 81 S.Ct. at 1642. On this record, we think the trial court abused its discretion by not excusing the juror.[4]

The appellant next claims that the trial judge erred by not allowing counsel to conduct a hearing, out of the jury's presence, to determine whether Officer Horton had taken any "Jencks" notes. We disagree.

Metropolitan Police Officer Alfred Horton was the first officer to respond to a report of an assault and, upon learning that the complaint concerned a rape incident, called Detective Frederick A. Cain of the sex squad who, in turn, asked Horton to bring the complainant to his office. In all, Officer Horton was with complainant about 20 minutes and during this time, Horton testified, he did no more than get complainant's name and date of birth[5] and transport her to the office of the sex squad.

 We hold that a Jencks Act[6] hearing out of the jury's presence only is required after direct or cross-examination of the witness reveals at trial that he recorded a statement. *See United Statees v. Hilbrich,* 232 F.Supp. 111, 120 (N.D.Ill. 1964). The possibility of prejudice to the defendant arises only if the jury is present when the hearing focuses on the producibility of the statement. Here, the witness on cross-examination stated that, after being informed of the rape, he took the complainant's name and date of birth and then transported her to the office of the sex squad. From the record it does not appear that defense counsel ever established that the witness recorded a statement. Therefore, the trial court was correct when it ruled that no foundation was laid for a "Jencks" hearing.

 Appellant's claim that he should be allowed to cross-examine government witnesses about the $10 witness fee received from the prosecutor is without merit, particularly since a stipulation had been entered pre-trial that each government witness was paid a $10 witness fee pursuant to D.C.Code 1973, § 15–714(a). We agree with the statement in *United States v. Thomas,* 320 F.Supp. 527, 530 (D.D.C. 1970) that "[t]he [witness] fee paid by the United States attorney is correctly to be viewed as a compensation for the interviewee's lost time, in many cases lost work-time." We would add that this is precious little compensation.

*Reversed with instruction to grant a new trial.*

---

4. *Murphy v. Florida,* —— U.S. ——, 95 S.Ct. 2031, 44 L.Ed. 589 (1975) is inapposite as it dealt with pre-trial publicity rather than personal relationships.

5. The prosecutor also informed the court and defense counsel at a bench conference that there were no notes taken by Officer Horton.

6. 18 U.S.C. § 3500, *supra* note 1.