James N. REASE, Appellant,

v.

UNITED STATES, Appellee.

No. 13476.

District of Columbia Court of Appeals.

Argued May 15, 1979.

Decided June 20, 1979.

Rehearing and Rehearing En Banc
Denied Aug. 22, 1979.

Martin S. Echter, Washington, D. C., appointed by the court, for appellant.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Michael W. Farrell, and Richard H. Saltzman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

PER CURIAM:

Appellant challenges his conviction for armed robbery, D.C.Code 1973, §§ 22–2901, –3202,[1] on several grounds. He asserts that the trial judge erred when she (1) failed to strike for cause a juror who, before being sworn, stated that appellant was "high off narcotics" at the time of *voir dire*; (2) refused to require the prosecutor to turn over notes which appellant claimed were discoverable under the Jencks Act, 18 U.S.C. § 3500 (1976), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) denied him the opportunity to rehabilitate his testimony with prior consistent statements; and (4) refused to give a lesser-included offense instruction on larceny.[2] We affirm.

I.

On February 6, 1977, appellant James Rease met two companions, Michael Lee and Carl McAlister. McAlister suggested that they try to get some money to satisfy their needs for narcotics. In response, appellant proposed that the three drive in his car to the home of the complainant, Gerald Barnes, with whom appellant had been acquainted a few years earlier. When McAlister asked how visiting Barnes would help them get money, appellant withdrew from under the seat of his car a gas-propelled pellet pistol that McAlister had given him for safekeeping. McAlister took the pistol and placed it in his pants; the three men proceeded to Barnes' apartment.

At approximately 4:00 p. m., the three arrived at Barnes' home and were admitted by Dr. Richard DeCarlo, who shared the apartment with Barnes. Barnes and DeCarlo already had two female guests; Barnes invited appellant and his companions to join them for some wine. The women left half an hour later, and, shortly thereafter, DeCarlo also left.

Barnes testified that McAlister then entered the kitchen, where Barnes was washing dishes, and demanded money at gunpoint. When Barnes replied that he had no money, McAlister ordered him into the living room. While McAlister kept the gun on Barnes, McAlister and his companions began collecting various items in the apartment. At one point, appellant cut a venetian blind cord, instructed Barnes to sit on

---

1. Appellant also was indicted for robbery, D.C. Code 1973, § 22–2901, assault with a dangerous weapon, D.C.Code 1973, § 22–502, and grand larceny, D.C.Code 1973, § 22–2201, but the government dismissed these counts before trial.

2. Appellant maintains, too, that the trial court erroneously instructed the jury that it had a duty to convict appellant if the evidence established every element of the offense beyond a reasonable doubt. This argument is without merit. The trial court's instruction was almost identical to the one approved by this court in *Watts v. United States,* D.C.App., 362 A.2d 706, 711 (1976) (en banc), and recently reaffirmed in *Washington v. United States,* D.C.App., 397 A.2d 946, 950 (1979).

the sofa, and tied his hands behind his back. Later, Lee bound Barnes' feet with a telephone cord. The three then gathered up the property they had collected and left.[3] McAlister, Lee, and appellant placed the stolen property in appellant's car and drove to the home of appellant's girlfriend. From there, they sold the goods over the next few days.

A few days after the robbery but before his arrest, appellant called Barnes and told him that he had been forced to participate in the robbery. According to Barnes, appellant stated that he would try to return some of the property if Barnes would drop any charges. Barnes replied that he could do nothing. Appellant was arrested a few days later.

At a jury trial beginning March 29, 1978, McAlister—who had pleaded guilty to the armed robbery charge—was a prosecution witness. Appellant was the only witness to testify in his defense. He asserted that he had opposed McAlister's plan to rob Barnes because Barnes was a friend. He contended, too, that McAlister had forced him to participate in the robbery. After the second day of trial, the jury convicted appellant of armed robbery. Thereafter, the court sentenced appellant to prison for a period of two to ten years.

## II.

Appellant's first argument concerns an incident which occurred after the jury panel had been chosen but before the jurors were sworn. A juror, Lucille Shorts, remarked to a United States Marshal that appellant was "high off narcotics" during the *voir dire*. Upon learning this, the court conducted an inquiry into whether Ms. Shorts should be stricken from the jury. Defense counsel, as well as the prosecutor, asked questions. Ms. Shorts explained that she

had based her opinion on her experience and training as a corrections officer. When the prosecutor asked whether she would be affected by her observation, Ms. Shorts replied:

No, I have to hear the evidence to form an opinion, not because of his nodding, or on drugs. I would have to hear the whole case before I form an opinion.

Despite this representation, defense counsel demanded that Ms. Shorts be stricken from the jury. The court refused.[4]

Appellant now maintains that he was denied the right to a trial before an impartial jury because the court refused to excuse Ms. Shorts for cause. He claims that his trial was tainted from the beginning because "at least one juror . . . had already concluded that Mr. Rease was a narcotics user—conceivably a person who would steal to 'feed' his habit," and that juror could have tainted the deliberations of the jury.

■ We consider first our standard of review. "[T]he 'determination of [a potential juror's] impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge.'" *Ristaino v. Ross,* 424 U.S. 589, 595, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976) (quoting *Rideau v. Louisiana,* 373 U.S. 723, 733, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (Clark, J., dissenting)). A trial judge, therefore, has broad discretion in deciding whether to excuse a juror for cause. *Wilburn v. United States,* D.C.App., 340 A.2d 810, 812 (1975). The test which the trial court must apply is

"whether the nature and strength of the opinion formed are such as in law necessarily * * * raise the presumption of partiality. . . . The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an

---

3. Among the items stolen were a television set, a stereo, and numerous items of clothing.

4. The court stated:

[T]he Court thinks that the correct position in this matter is that when a juror makes an observation out loud, under circumstances such as this, that observation is no more than the juror might make in the jury room. And,

the Court does not believe that it ought to second guess a juror who is obviously intelligent, obviously is speaking from experience, and firmly has stated that her decision in this case would, with respect to the observations she has made, would not be influenced under the circumstances. And, the Court feels that she should not be removed.

opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside." [*Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961) (quoting *Reynolds v. United States,* 98 U.S. 145, 156–57, 25 L.Ed. 244 (1878)).]

Accordingly, this court may not reverse the trial court's finding on the force of a potential juror's opinion unless the juror's partiality is manifest. *See Irvin, supra,* 366 U.S. at 723, 81 S.Ct. 1639; *Wilburn, supra* at 812.

█ The Supreme Court has declared that the mere existence of a preconceived notion as to the guilt or innocence of the accused is, without more, insufficient to rebut the presumption of a prospective juror's impartiality. *Irvin, supra* at 723, 81 S.Ct. 1639; *see Reynolds, supra* at 155–56. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin, supra,* 366 U.S. at 723, 81 S.Ct. at 1643; *accord, Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). A juror's assurance that he or she can be fair is not dispositive, however. The trial court is required to assure itself that the juror's assertion can be accepted. *See Murphy, supra* at 802–03, 95 S.Ct. 2031; *Wilburn, supra* at 812; *United States v. Haldeman,* 181 U.S.App.D.C. 254, 290 n.51, 559 F.2d 31, 67 n.51 (1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

█ In this case, the record reveals that Ms. Shorts had not formed an opinion about the appellant's guilt or innocence. She had expressed only her belief that appellant was on narcotics at the time of the *voir dire.* The court properly conducted an inquiry into whether this observation had affected her impartiality. The juror repeatedly as-

serted that her observation would not affect her judgment—that she would base her judgment only on the evidence presented at trial. After evaluation of her response and demeanor, the court concluded that Ms. Short would be impartial. On this record, we cannot conclude that partiality was so manifest that we must find the trial court abused its discretion by refusing to strike Ms. Short from the jury for bias.[5]

### III.

Appellant next maintains that the trial court erred when it failed to order the prosecutor to produce the portion of his notes which appellant alleged were discoverable under both the Jencks Act, 18 U.S.C. § 3500 (1976), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, appellant sought that portion of the prosecutor's notes of his interview with Gerald Barnes which related to appellant's post-robbery phone call to Barnes. The record indicates that the prosecutor had informed appellant of most of what he had learned from Barnes. Appellant argues only that the government improperly withheld a portion of the notes dealing with appellant's promise to Barnes that he would try to return the stolen goods if Barnes would drop the charges. After viewing the notes *in camera,* the trial court held that the prosecutor need not release them to appellant.[6]

█ We deal first with the Jencks issue. It is clear that a prosecutor's notes of an interview with a government witness may be subject to production under the Jencks Act. *See Goldberg v. United States,* 425 U.S. 94, 98, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); *Matthews v. United States,* D.C. App., 322 A.2d 908, 909–10 (1974); *Saunders v. United States,* 114 U.S.App.D.C. 345,

---

5. At trial, the jury heard Carl McAlister testify that he and appellant were drug addicts and had decided to rob Barnes in order to get money to buy drugs. Although appellant took the stand, he did not contest McAlister's assertion that he was a narcotics addict at the time of the crime. The trial court did not know at the time of *voir dire* that undisputed evidence of appel-

lant's addiction would be presented at trial. Accordingly, this evidence is not relevant to our review of the trial court's ruling on the motion to strike the juror.

6. Although the notes were not made part of the trial record, the government lodged them under seal with this court for our review.

348–49, 316 F.2d 346, 349–50 (1963). The prosecutor need not release his notes, however, unless the recorded information constitutes a "statement" within the meaning of the Act. *See* 18 U.S.C. § 3500(e) (1976).

■ Appellant suggests that the prosecutor's notes could constitute a "statement" under either subsection (e)(1) or (e)(2) of the Act. Having reviewed those notes, we find neither argument persuasive. First, a writing is a "statement" under subsection (e)(1) only if it has been "signed or otherwise adopted or approved" by the witness. In this case, it is clear that the writing in question was simply the prosecutor's brief notes of his discussion with Barnes. No testimony was adduced at trial that this information was signed, adopted, or approved by Barnes. *Dyas v. United States,* D.C.App., 376 A.2d 827, 834, *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977).

Second, the writing also does not satisfy the requirements of subsection (e)(2), which defines a statement as a transcription constituting a "substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously." Mere selective notations or excerpts from the witness' statements will not satisfy the requirements of the Act. *Strickland v. United States,* D.C.App., 389 A.2d 1325, 1328–29 (1978). Here, the relevant notes contain only the briefest of comments with regard to appellant's conversation with Barnes. They may best be described as " '[t]ypical interview notes . . . selective [and] . . . episodic.' " *Dyas, supra* at 834 (quoting *Goldberg, supra,* 425 U.S. at 126, 96 S.Ct. 1338 (Powell, J., concurring)). Accordingly, the trial court did not err when it concluded that the Jencks Act did not require production of those notes.

■ We now turn to appellant's contention that the prosecutor's notes contained exculpatory evidence material to guilt or punishment and that *Brady,* therefore, mandated their production. We see no way that the brief notations in the prosecutor's notes could be deemed exculpatory. To the

contrary, as Barnes' trial testimony about the telephone conversation suggests, the comments were inculpatory, indicating that appellant was trying to make a deal with Barnes by promising to try to arrange the return of some of the stolen goods in exchange for a commitment to drop the charges. We therefore hold that the trial court did not abuse its discretion when it refused to require the prosecutor to release his notes to appellant.

### IV.

In order to "rehabilitate" his client's testimony, appellant's counsel attempted to question either appellant or the officer who arrested him about "prior consistent statements" which appellant had made at the time of his arrest. The trial court found that appellant had only been impeached with regard to one, collateral matter— whether he had told police at the time of his arrest that he did not know McAlister's address. The court accordingly stated that it would permit rehabilitation by prior consistent statement on that point alone. Finding nothing in the police report proffered by appellant that would have rehabilitated appellant's testimony on that point, the court refused to permit the defense to use the report or examine the arresting officer.

■■ It is well established that "prior consistent statements may not be used to support one's own unimpeached witness." *Tibbs v. United States,* D.C.App., 359 A.2d 13, 16 (1976); *Johnson v. United States,* 121 U.S.App.D.C. 19, 21–22, 347 F.2d 803, 805– 06 (1965); *see May v. Washington, Virginia and Maryland Coach Co.,* D.C.App., 197 A.2d 267, 269 (1964). Because "mere repetition does not imply veracity," such statements are admitted for rehabilitation purposes only in those "exceptional situations" in which they can be of very clear help to the factfinder in determining whether the witness is truthful. *Coltrane v. United States,* 135 U.S.App.D.C. 295, 304, 418 F.2d

1131, 1140 (1969).[7] Moreover, if rehabilitation is necessary, the proposed evidence must be directed only at the particular impeachment that occurred. *United States v. Mitchell,* 385 F.Supp. 161, 163 (D.D.C. 1974), *aff'd sub nom. United States v. Haldeman, supra.* It may not be used in an attempt to support a witness' credibility generally by showing that his unimpeached testimony at trial is consistent with his earlier statements.

■ The record reveals that on cross-examination, appellant first stated that he did not recall telling anyone that he was unaware of McAlister's address. On further questioning, he stated that he had told the officer who arrested him that he did not know where McAlister lived. Thus, the trial court was correct in finding that appellant was impeached on this rather insignificant point. Nonetheless, the only relevant information contained in the police report which appellant sought to introduce was appellant's statement to the police that he did not know where McAlister lived. This statement was consistent only with the testimony with which the government impeached appellant; thus, it is difficult to conceive how it could have been used to rehabilitate appellant's testimony. Even if it could have served some rehabilitative purpose, its significance would have been so slight that we cannot find the court committed reversible error by excluding the statement.

■ We should note, moreover, that no other information in the police report related to any subject on which appellant was impeached. Thus, nothing else in the report would have been admissible as a prior consistent statement. Contrary to appellant's assertion, in this jurisdiction the report as a whole could not be used to support his general credibility, without regard to the particular impeachment that occurred. *See Mitchell, supra* at 163.

## V.

Finally, appellant argues that the trial court improperly refused to give the jury a lesser-included offense instruction on larceny. Appellant explains that the jury might have decided that he was guilty of larceny, but not armed robbery, if it found "that Mr. Rease was not a willing participant while in the apartment, but decided to join in keeping the proceeds at some later point in time" or in disposing of the goods. We disagree.

■ A defendant is entitled to a lesser-included offense instruction when (1) all elements of the lesser offense are included within the offense charged, and (2) there is a sufficient evidentiary basis for the lesser charge. *Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Rouse v. United States,* D.C.App., 402 A.2d 1218 (1979); *Day v. United States,* D.C.App., 390 A.2d 957, 961 (1978). Appellant and the government agree that larceny is a lesser-included offense of robbery and armed robbery. *See Rouse, supra,* 402 A.2d at 1219–20; *United States v. Dixon,* 152 U.S.App.D.C. 200, 202, 469 F.2d 940, 942 (1972); *Walker v. United States,* 135 U.S.App.D.C. 280, 284, 418 F.2d 1116, 1120 (1969). Appellant therefore meets the first requirement.

■ As to the second question—whether a sufficient evidentiary basis for the charge exists—the court is not required to give a lesser-included offense instruction unless proof of the greater offense will require the jury to find a disputed fact that need not be found to prove the lesser

---

7. In this jurisdiction, the generally recognized exceptions to the prohibition against use of prior consistent statements are when (1) the credibility of a witness is undermined by the suggestion that his story is one of recent fabrication or that he has a motive for lying, *see Copes v. United States,* 120 U.S.App.D.C. 234, 236 & n.3, 345 F.2d 723, 725 & n.3 (1964); *United States v. Mitchell,* 385 F.Supp. 161, 163–64 (D.D.C.1974), *aff'd sub nom. United States v. Haldeman, supra; accord,* Fed.R.Evid. 801(d)(1)(B), or (2) the witness' testimony has been impeached by a portion of a statement which also contains relevant information that could be used to meet the force of the impeachment. *Coltrane, supra,* 135 U.S.App.D.C. at 304, 418 F.2d at 1140.

charge. *Day, supra* at 962; *see Sansone, supra,* 380 U.S. at 350, 85 S.Ct. 1004. The defendant bears the burden of convincing the court that there is evidence indicating the existence of a factual dispute. His burden is a light one, nonetheless, for any evidence, "however weak," will satisfy this requirement. *Rouse, supra,* 402 A.2d at 1221; *Day, supra* at 962. Furthermore, even if there is no dispute about the facts tending to prove the element unique to the charged offense, the court should appraise all the testimony to see if it is capable of more than one reasonable inference. *Day, supra* at 962; *United States v. Comer,* 137 U.S.App.D.C. 214, 219, 421 F.2d 1149, 1154 (1970). A trial judge can properly deny the requested instruction only if there is no factual dispute and a finding to the contrary on the only evidence at issue would be irrational. *Rouse, supra* 402 A.2d at 1221; *Day, supra* at 962.

█ In the present case, the element distinguishing robbery from larceny is that, in robbery, the property taken must have been within the victim's "immediate actual possession" *United States v. Dixon, supra,* 152 U.S.App.D.C. at 204, 469 F.2d at 944. In contrast, larceny is a crime against possession, not immediate possession by a person. *See Rouse, supra* at 402 A.2d 1219–1220.

█ Here, appellant does not contend that the property had not been stolen from Barnes' immediate actual possession. Thus, he does not argue that a robbery did not take place. He maintains, rather, that the jury could have found that because he was acting under duress when he took the goods from appellant, he was not legally responsible for stealing the property from Barnes' immediate actual possession. Instead, he suggests the jury might have believed that he participated only at a later point in time by keeping the goods or helping to dispose of them, taking advantage of a fait accompli. If so, he urges, the jury could have found him guilty of larceny.

Appellant's argument confuses the difference between larceny and accessory after the fact or aiding and abetting. If the jury believed that appellant had joined in the crime only after the asportation of the goods had been completed, it could not have found that appellant had committed larceny from Barnes, for at that time the goods were no longer in Barnes' possession. By stealing the goods, McAlister and Lee had converted them to their own possession. *See* R. Perkins, Criminal Law 280 (2d ed. 1969). Thus, in these circumstances, the jury could only have found appellant guilty of acting as an accessory after the fact of robbery. *See United States v. Barlow,* 152 U.S.App.D.C. 336, 340, 470 F.2d 1245, 1249 (1972). On the other hand, if the jury believed that the asportation of the goods was continuing at the time appellant decided to aid McAlister and Lee, then it would have had to find him guilty of aiding and abetting the original offense, robbery—not larceny. *Id.* at 340–42, 470 F.2d at 1249–51.

Accordingly, we hold that the court did not err in refusing to give the requested lesser-included offense instruction.

*Affirmed.*

MACK, Associate Judge, dissenting in part:

While concurring in all other respects, I respectfully dissent from Part II of the majority's opinion. Here we have a juror, preparing to judge as she ultimately did, the guilt or innocence of a defendant for the crime of armed robbery, who announces prior to hearing the evidence, her firm conviction that the defendant was then "high off narcotics." The likelihood of partiality, when weighed against the difficulty of replacing the juror at this point, seems to me so great as to have required excusing her for cause. The very nature of the juror's opinion placed her in a posture of one who has heard evidence establishing motive—a fact raising a presumption of partiality which threatens the presumption of innocence. *See Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).