*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CF-741

JULIUS L. WORTHY, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-507-12)

(Hon. Jose M. Lopez, Trial Judge)

(Argued April 15, 2014                                    Decided October 9, 2014)

*Justin Murray*, Public Defender Service, with whom *James Klein*, Public Defender Service, was on the brief, for appellant.

*Margaret Barr*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *Michael Marando*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY and BECKWITH, *Associate Judges*, and STEADMAN, *Senior Judge*.

Opinion of the court by *Senior Judge* STEADMAN.

Dissenting opinion by *Associate Judge* BECKWITH at page 9.

STEADMAN, *Senior Judge*:     Appellant Julius L. Worthy, convicted at a bench trial of assault and attempted threats,[1] challenges the introduction of a prior consistent statement made by the victim relating to threats made by appellant. We conclude that under the circumstances of this case, the prior consistent statement was properly admitted into evidence.

**Facts**

This case arose out of a family quarrel between Worthy and his older sister, Alexsandra Green, shortly after midnight on January 8, 2012.  Green testified that after Worthy said that he was "going to whoop [her] butt," she ran from the apartment and asked a building security guard to call the police.  Worthy followed her, the argument continued, and Worthy hit Green several times.

Both parties challenged this testimony with prior inconsistent statements made by Green.  The government introduced Green's grand jury testimony, given twelve days after the incident, in which she had said that Worthy had threatened that "[h]e was going to kill [her]."  The defense, for its part, impeached Green with

---

[1]  D.C. Code § 22-404 (2012 Repl.) (assault) and D.C. Code §§ 22-407, 22-1803 (attempted threats).

her statement to Detective Ricks on January 9, the day following the incident, that her brother "did not do anything to [her]."[2]

The government in rebuttal called Detective Derek Bell. Over the objection of defense counsel, Bell testified to a telephone interview with Worthy the morning of the incident. During the interview, Green told Bell that Worthy "began to assault her, striking her several times in the face," and "at some point, he also made threats towards her, stating that he will kill her." The issue on appeal is whether this prior consistent statement was admissible as an exception to the rule against hearsay.

**Analysis**

As a general rule, prior consistent statements are not admissible to bolster the credibility of a witness. *Rease v. United States*, 403 A.2d 322, 327 (D.C. 1979). The rationale for excluding such prior statements is lack of relevance. "Mere repetition does not imply veracity." *Scott v. United States*, 412 A.2d 364,

---

[2] This statement appears to have been made by Green when she was protesting the arrest of Worthy that was taking place at the time.

373 (D.C. 1980). However, once a witness has been impeached, exceptions come into play.

One such exception has been codified in D.C. Code § 14-102 (b)(2) providing for the admission of a prior consistent statement that "is offered to rebut an express or implied charge against the witness of recent fabrication or improper influences or motives." Such a statement is deemed nonhearsay and constitutes substantive evidence. This provision duplicates the almost identically worded Federal Rule of Evidence 801 (d)(1)(B). *See Tome v. United States*, 513 U.S. 150, 156 (1995); *Mason v. United States*, 53 A.3d 1084, 1092 (D.C. 2012). A second exception exists that where a witness's testimony has been impeached by a portion of a statement, the remainder of the statement can be introduced insofar as it meets the force of the impeachment. *See Musgrove v. United States*, 441 A.2d 980, 985 (D.C. 1982).

Worthy in essence argues that apart from these two situations, the introduction of prior consistent statements is barred. We cannot agree. As the government correctly asserts, the overriding principle is that prior consistent statements are admissible to rehabilitate a witness when the facts and circumstances of the statement have particular relevance in refuting the theory of

impeachment that has been advanced. This very principle is reflected in a proposed amendment to the Federal Rules of Evidence, which the Supreme Court recently submitted to Congress, that would add a subsection 801 (d)(1)(B)(ii). The proposed amendment would allow the admissibility of a prior consistent statement as substantive evidence when the statement is offered "to rehabilitate the declarant's credibility as a witness when attacked on another ground."[3]

Our own case law has recognized this ground of admissibility of a prior consistent statement. As early as *Rease*, *supra*, 403 A.2d at 327-28, we noted that

---

[3] The Judicial Conference of the United States' Advisory Committees on Appellate, Bankruptcy, Criminal, and Evidence Rules specifically noted that the existing rule dealt with only one basis for admission of a prior consistent statement as substantive evidence. This change reflects the advisory committee's recognition that such statements could be admitted on other bases solely for "rehabilitation," such as to explain an inconsistency or to rebut a charge of bad memory. The committee concluded that the distinction between substantive use and that only of rehabilitation was confusing and without practical significance. The committee thus recommended the expanded application of the rule. In doing so, however, it stressed that the amendment did not change existing limits on introduction of prior consistent statements and that "[a]s before, prior consistent statements under the amendment may be brought before the fact finder only if they properly rehabilitate a witness whose credibility has been challenged." *See* Sidney A. Fitzwater, *Report of the Advisory Committee on Evidence Rules* (May 3, 2012), *in* PRELIMINARY DRAFT OF PROPOSED AMENDMENTS TO THE FEDERAL RULES OF APPELLATE, BANKRUPTCY, AND CRIMINAL PROCEDURE, AND THE FEDERAL RULES OF EVIDENCE, COMMITTEE ON RULES OF PRACTICE AND PROCEDURE OF THE JUDICIAL CONFERENCE OF THE UNITED STATES 213, 213-19 (Aug. 2012); Judicial Conference of the United States, *Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure* 1, 29-32 (Sept. 2013).

prior consistent statements could be admitted "for rehabilitation purposes" where they "can be of very clear help to the factfinder in determining whether the witness is truthful" and where the proposed evidence "is directed only at the particular impeachment that occurred."[4]  Subsequently, in *Johnson v. United States*, 434 A.2d 415 (D.C. 1981), we articulated much the same evidentiary standard in sustaining a trial court admittance of a prior consistent statement where the witness had been impeached specifically by a prior inconsistent statement, saying:  "[T]here is 'the corollary principle [to the general rule of exclusion] that a prior consistent statement . . . may be introduced into evidence to rehabilitate a witness.'  *United States v. Smith*, 160 U.S. App. D.C. 221, 225, 490 F.2d 789, 790 (1974) (footnote omitted).  Such rehabilitation is permissible when the witness' credibility has been challenged, *Rease v. United States*, *supra*, 403 A.2d at 328 n.7, whether by impeachment with a prior inconsistent statement or by implication that the witness

---

[4]  It is true that in *Rease*, *supra*, 403 A.2d at 327-28, we thought that this would be an "exceptional situation" and sustained the trial court's exclusion of the proffered consistent statement.  While a footnote in *Rease* observed that the "generally recognized exceptions" to the prohibition against use of prior consistent statements were the two already noted above, we do not read *Rease* or any subsequent cases as holding that these exceptions are all-inclusive.  Several subsequent cases have generally recited the *Rease* analysis.  *See, e.g.*, *Battle v. United States*, 630 A.2d 211, 215-16 (D.C. 1993).

has a motive to lie." *Id.* at 420-21 (bracketed addition in original; citations omitted).[5]

Green's statement to Detective Bell on the very day of the incident comfortably falls within the limited conditions for admissibility to rehabilitate propounded in *Rease.* Green's credibility was significantly brought into question by the introduction of her statement to Detective Ricks only a day after the incident that Worthy "didn't do anything to [her]." The relevance of the prior consistent statement that was made to the police even closer in time to the incident borders on being self-evident. It completely refutes any suggestion that the Ricks statement reflected Green's original view of the facts as related to the police and that her later statements to the grand jury and to the trial judge were falsified or based on a fading memory. It plainly could be of "very clear help to the factfinder" in determining truthfulness and was aimed squarely at the "particular impeachment

---

[5] While we found that both conditions existed in the facts of *Johnson*, the opinion by use of the disjunctive "or" suggests that either ground alone would have been sufficient. To be clear, *Johnson* does not open the door to admissibility, willy-nilly, of prior consistent statements simply because a prior inconsistent statement has been used for impeachment, a point we made clear in *Rowland v. United States*, 840 A.2d 664, 679 (D.C. 2004). As we noted in subsequently distinguishing *Johnson*, the limitations imposed by *Rease* were effectively met in that case. *See McClain v. United States*, 460 A.2d 562, 570 n.14 (D.C. 1983).

that had occurred." *Rease*, *supra*, 403 A.2d at 328.[6]  Furthermore, the government

made clear that the statement to Detective Bell was being proffered not for its truth

but solely for rehabilitation in this bench trial.  In short, the trial court did not err or

abuse its discretion[7] in admitting the challenged prior consistent statement.

Accordingly, the judgment appealed from is

*Affirmed.*

---

[6] We thus take issue with the dissent's assertion that "Ms. Green's statement is not relevant to meet the force of her impeachment other than through the "repetition implies veracity" inferential chain."  However one reads the government's assertions in the brief dialogue at trial, the issue before us is whether the trial court itself at a bench trial erroneously admitted the evidence.  And, as we have already stated in footnote 5, we reject any suggestion that impeachment with a prior inconsistent statement is itself enough to allow admission of a prior consistent statement without meeting the stringent limitations required by *Rease* quoted in the text *supra*.

[7] "The trial judge has broad discretion with respect to the admission or exclusion of prior consistent statements." *District of Columbia v. Bethel*, 567 A.2d 1331, 1336 (D.C. 1990) (internal citations omitted).

BECKWITH, *Associate Judge*, dissenting: The government in this case sought to admit a prior statement of Alexsandra Green to Detective Derek Bell the day of the incident that was consistent with certain statements she made in the grand jury two weeks after the incident that the government wanted the trial court to credit as true. The government's theory of relevance for this prior consistent statement was that it "rehabilitated" Ms. Green after she was impeached with an inconsistent statement made to Detective Ricks a day after the incident. And the government's theory for why the prior consistent statement rehabilitated her—that is, why it met the force of the impeachment by inconsistency—was not that it showed that the statement was not truly inconsistent, but simply that it tended to show that Ms. Green was credible because "she's been consistent with her story." In other words, her repetition of the story implied its veracity. Because this fallacy is precisely what the general rule of exclusion for prior consistent statements is designed to prevent, the statement was, in my view, erroneously admitted, and I respectfully dissent from the majority's contrary holding.

Federal Rule of Evidence 801 (d)(1)(B) and its substantially verbatim counterpart in the District, D.C. Code § 14-102 (2012 Repl.), codify the common

law rule that prior consistent statements, while generally inadmissible,[1] are admissible when they rebut a charge of "recent fabrication" and were made before the motive to fabricate arose. *See Tome v. United States*, 513 U.S. 150, 156 (1995). While the common law rule only admitted such statements for "rehabilitative" purposes, Rule 801 (d) and § 14-102 label them as "non-hearsay" and admit them for their truth. In *McClain v. United States*, 460 A.2d 562 (D.C. 1983), this Court held that an attack on a witness's testimony based on an alleged inability to remember the incident, in the absence of "any specific suggestion of fabrication," was not a charge of recent fabrication for § 14-102 purposes. *Id.* at 570. Here, Mr. Worthy's attack on the accuracy of Ms. Green's grand jury testimony was an attack on her memory, not a suggestion that she had a particular motive to fabricate—to deliberately make up—her claim to the grand jury that Mr. Worthy tried to kill her. It thus seems clear that Ms. Green's statement is not admissible for its truth under § 14-102.

---

[1] *See, e.g.*, *United States v. Simonelli*, 237 F.3d 19 (1st Cir. 2001) (noting that before *Tome*, most federal courts had held that Rule 801 (d) did not "displace the common law rule that prior consistent statements could be introduced in certain situations to rehabilitate a witness," which "[u]sually" meant situations where the statement was necessary for completeness).

There does not appear to be any other provision of D.C. law that would allow admission of Ms. Green's prior consistent statement to Detective Bell for its truth. The Supreme Court in *Tome* noted that its holding (that prior consistent statements are not admissible under Rule 801 (d)(1)(B) unless they predate an alleged motive to fabricate) theoretically did not preclude admission of prior consistent statements not meeting the strictures of Rule 801 (d) for their truth under some other provision of federal law, such as Federal Rule of Evidence 807, the "residual" hearsay exception. *Tome*, 513 U.S. at 158-59. But this court has not yet recognized such an exception, *Myerson v. United States*, No. 12-CM-1642, slip op. at 2 n.3 (D.C. Aug. 28, 2014), and even if we had, it would surely be used—as is the federal rule—"very rarely, and only in exceptional circumstances."[2]

The government alternatively claims, and the majority holds, that even if Ms. Green's statement is not admissible for its truth, it is admissible simply for "rehabilitation" purposes. That is, the statement's relevance is not to show that its contents are true, but merely to show that Ms. Green is credible, by meeting the force of some specific line of impeachment tending to show she is not credible. It is worth noting at the outset that some federal circuits addressing the issue after *Tome* have held that prior consistent statements are not admissible for any

---

[2] Advisory Committee Note to Federal Rule of Evidence 807.

purpose—even simply so-called "rehabilitative" purposes—if they do not meet the strictures of Rule 801 (d). In so holding, these courts point out that any fine distinction between these two concepts—a prior consistent statement coming in for its truth and merely for "rehabilitation" purposes—is illusory. *See, e.g.*, *Simonelli*, 237 F.3d 19 (1st Cir. 2001) (noting a circuit split on this issue and the reasoning underlying it). It is nonetheless true that the "majority view" in the federal courts is that prior consistent statements not admissible for their truth under 801 (d) might still be admissible not for their truth, but simply to rehabilitate a witness. And the recent proposed amendment to Rule 801 (d), cited by the majority here, seems to validate that view.

There is no such proposed amendment to § 14-102, and we have never had occasion to address the issue that has split the federal courts after *Tome*—that is, whether prior consistent statements, even if not admissible under § 14-102, might still be admissible for a non-hearsay purpose, to "rehabilitate" a witness, and if so, under what circumstances such rehabilitation would be allowed other than the rule of completeness.

While this is an interesting question, we need not resolve it here, because Ms. Green's statement is not relevant to meet the force of her impeachment other

than through the "repetition implies veracity" inferential chain. Even under the majority federal view, a prior consistent statement is not admissible to "rehabilitate" a witness simply because she has been attacked; the statement must have some relevance in meeting the force of a specific line of impeachment that goes beyond simply "repetition implies veracity." The typical context in which consistent statements are offered to rehabilitate a witness for a reason other than to rebut a charge of recent fabrication is the rule of completeness. *See, e.g.*, *Simonelli*. But one could imagine other contexts. For example, as Justice Breyer noted in dissent in *Tome*, a "postmotive" statement might be relevant to rebut a charge of recent fabrication based on a motive to lie "when the speaker made the prior statement while affected by a far more powerful motive to tell the truth."[3] 513 U.S. at 172 (Breyer, J., dissenting).

Another exceptional context in which a prior consistent statement should arguably be admitted for "rehabilitative" purposes, even if not admissible under

---

[3] Imagine, for example, a case in which a mother reports to a doctor that her child was abused by a babysitter (where, say, the truth is important to save the child's life). In a subsequent criminal trial of the babysitter for child abuse, the mother testifies that she saw the babysitter hit the child. The defense claims the report is false, motivated by a desire not to pay the babysitter. It would seem appropriate that the government would be able to introduce the mother's prior consistent statement to the doctor, not for its truth, but to meet the force of the suggestion that her current testimony is primarily motivated by a desire not to pay the babysitter.

§ 14-102, might well be where the statement meets the force of an impeachment on grounds of faulty memory or perception. The defense came dangerously close here to justifying admission of the statement on such a ground, were we to recognize it as a valid ground for admission. The defense intimated that Ms. Green's grand jury testimony was affected by her ingestion of Seroquel, an antidepressant that Ms. Green acknowledged affects her memory. If the government's theory of relevance in introducing Ms. Green's statement to Detective Bell—which was given at a time when Ms. Green was not under the influence of Seroquel—was that it showed that Ms. Green's claim that Mr. Worthy had threatened to kill her was not simply a product of a Seroquel-induced haze, then our task on appeal might be rendered more difficult.

Here, however, the government's theory of relevance was simply that the prior statement tended to show that the grand jury testimony was credible because the two stories were similar. And that theory is undisputedly invalid.[4] The

---

[4] The majority properly declines to embrace the government's argument that this statement could also be admissible to show that the statement to Detective Ricks the next day—that Mr. Worthy did not do anything to her—was not actually inconsistent with her grand jury testimony. It also properly rejects the government's invitation to create what in essence is an exception to the hearsay rule for prior consistent statements of a domestic violence victim. Some states have such a rule—California created one shortly after the O.J. Simpson verdict, *see, e.g.*, Cal. Evid. Code § 1370—but the District of Columbia does not.

majority states that the "relevance of the prior consistent statement that was also made to the police even closer in time to the incident borders on being self-evident." *Ante* at 7. Yet the timing of the statement does not change the fact that the theory of relevance is ultimately nothing more than the "repetition implies veracity" fallacy that the general rule of exclusion for prior consistent statements is meant to prevent—that is, a contention that the witness said the same thing before the inconsistency that she later said to the grand jury.

To the extent the majority suggests that a prior consistent statement is admissible for rehabilitative purposes so long as the witness's credibility has been challenged "by impeachment with a prior inconsistent statement," *ante* at 6, this cannot be the law. Such a broad exception would swallow the general rule of exclusion of prior consistent statements. While some states have chosen to explicitly allow prior consistent statements for this purpose, *see, e.g.*, Cal. Evid. Code § 791 (allowing admission of prior consistent statements when they predate *either* a prior inconsistency *or* an alleged motive to lie), the District has not.

I also decline the government's invitation to create a *per se* harmlessness rule for the erroneous admission of prior consistent statements in bench trials. Here, Ms. Green was the only witness to the alleged threat, her descriptions of that

offense were contradictory, and the defense impeached her at every turn. The government's rebuttal argument then relied heavily upon Ms. Green's prior consistent statement to portray her as credible and to downplay the inconsistencies. The prosecutor stated that Detective Bell's testimony showed that "Ms. Green was consistent then. She was consistent with what she told officers very short in time after the incident happened that morning with what she told a mere two or so weeks later in grand jury." As we have often stated, "[a] prosecutor's stress [upon] the centrality of particular evidence in closing argument tells a good deal about whether the admission of the evidence was meant to be, and was, prejudicial." *Morten v. United States*, 856 A.2d 595, 602 (D.C. 2004) (quotation marks omitted).

More significantly, the trial court explicitly relied upon the prior consistent statement in its verdict, crediting Ms. Green's grand jury testimony that Mr. Worthy "threatened to kill her" in part because "this is the story she gave the police," noting that "[i]t was consistent, as the officer also testified, that that's what she related to him, Officer Bell," and concluding in the very last sentence of its findings that the government had proved beyond a reasonable doubt that Mr. Worthy committed the offense of attempted threats "by saying 'I'm going to kill you'"—the words she used in the grand jury testimony that, in the court's view,

had been so bolstered by the prior consistent statement. In other appeals from bench trial convictions, we have readily held that a trial court's evidentiary error was not harmless where the court specifically relied upon the erroneously admitted hearsay in convicting the defendant. *See, e.g., In re L.L.*, 974 A.2d 859, 866 (D.C. 2009) (finding that the erroneous evidentiary ruling required reversal "[b]ecause the trial court expressly referred to the substance of the statement when explaining its decision that [the defendant] was guilty"); *Jones v. United States*, 17 A.3d 628, 634 (D.C. 2011) (concluding that because the trial court, "in adducing appellant's guilt," relied on hearsay testimony that "never should have been admitted into evidence," the judgment "undoubtedly was substantially swayed by the error and 'it is impossible to conclude that substantial rights were not affected.'") (citation omitted). At least with respect to the attempted threat charge, the government has not established that it is "*highly probable* that [the] error did not contribute to the verdict." *In re Ty.B.*, 878 A.2d 1255, 1267 (D.C. 2005) (citation and internal quotation marks omitted). Julius Worthy's conviction on that count should be reversed.