**Darrell B. TIBBS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8749.**

District of Columbia Court of Appeals.

Argued June 17, 1975.

Decided June 9, 1976.

Austin P. Frum, Washington, D.C., appointed by this court, for appellant.

Michael I. Gewirtz, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Stuart M. Gerson, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from a jury conviction for robbery,[1] kidnapping,[2] and extortion.[3] Appellant makes three claims of error, only one of which requires extended discussion here: whether the trial court erred in admitting into evidence an unsworn statement which the complaining witness made to the police after appellant's arrest.[4] We reverse and remand for a new trial.

The charges at issue arose from an encounter between appellant and the complaining witness, Benton George, in the early morning hours.

In brief, Mr. George's testimony was that while driving his automobile he was flagged down by appellant who was standing in the roadway on Georgia Avenue, N.W. Mr. George picked him up as a passenger and shortly thereafter he identified himself as an "officer" of the Federal Bureau of Investigation and stated that George was under arrest for soliciting. The complaining witness further testified

---

1. D.C.Code 1973, § 22–2901.

2. D.C.Code 1973, § 22–2101.

3. D.C.Code 1973, § 22–2306.

4. Appellant also contends that the trial court erred in permitting the prosecutor to make a

"missing witness" argument and in instructing on that point, but we see no prejudicial error. In view of our disposition of this case it is unnecessary to reach appellant's remaining contention that the trial court should have granted his motion for judgment of acquittal.

that through force, intimidation and deception appellant induced him to drive to several locations, took cash and other items from his wallet, and then demanded further payment to drop the purported soliciting charge.

George reported these incidents to the Metropolitan Police Department, and later the same day he telephoned appellant under police supervision and arranged to deliver the agreed upon sum of money. Appellant was arrested by members of a police surveillance team that afternoon after he had met George and exchanged the contents of George's wallet for an envelope containing money which had been supplied by the police.

Subsequent to the testimony of the complaining witness, Officer Walter C. Reeder of the Metropolitan Police Department was called by the government. On direct examination, he spontaneously revealed the existence of a tape recording of an unsworn statement (relating to the events surrounding the crimes charged) which George had made to the police after appellant had been arrested.[5] Upon that disclosure, the trial court ruled that the tape recorded statement was subject to the provisions of the Jencks Act[6] and ordered that a stenographic transcription be made to give the defense an opportunity to "recall Mr. George for additional testimony, cross-examination, in light of the new discovery of that tape if you [defense counsel] want to do that . . . ."[7]

After the transcript had been prepared, Officer Reeder again took the stand for further direct examination, and testified *inter alia*, that he could not recall the chronology of events which George had related to him and that his memory could be refreshed by the transcript. When questioned further, however, Reeder stated that, having read the transcript, he could not in fact recall what George had told him in the post-arrest interview because the statement was "too long and involved," but that the transcript was an accurate record of the statement.

At that point, the transcript, which was generally consistent with George's previous testimony at trial, was offered into evidence by the government which argued, as nearly as we can understand it, that it would refresh Officer Reeder's memory. Over objection, the trial court admitted the transcript and the officer was permitted to read it in its entirety to the jury.[8]

On appeal, the government concedes, and properly so, that the rule of present recollection refreshed is inapplicable because (a) that doctrine does not permit admission of a document into evidence and (b) even after having had access to the transcript, Officer Reeder was unable to recall the contents of George's statement. Although not advanced at trial, the government now presents on appeal another theory. It contends the transcript was properly admitted under the doctrine of past recollection recorded.[9] We disagree.

---

5. Neither counsel for the government nor counsel for the defense was aware of the tape recording before this point, and therefore the officer had not been asked about it previously.

6. 18 U.S.C. § 3500 (1970).

7. At the same time, the trial court ruled that the tape was not admissible under the *res gestae* or identification exceptions to the hearsay rule.

8. It is not discernible from the record whether the transcript, which was made an exhibit, was later taken into the jury room.

9. "The primary difference between [present recollection refreshed and past recollection recorded] is the ability of the witness to testify from present knowledge: where the witness' memory is revived, and he presently recollects the facts and swears to them, he is obviously in a different position from the witness who cannot directly state the facts from present memory and who must ask the court to accept a writing for the truth of its contents because he is willing to swear, for one reason or another, that its contents are true." [*United States v. Riccardi*, 174 F.2d 883, 886 (3d Cir.), *cert. denied*, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949) (foot-

■ It is true that a written record may serve as a substitute for a witness's present memory when that memory has been exhausted and when appropriate standards of reliability have been met. *Cohen v. Berry,* D.C.App., 188 A.2d 302 (1963); *Moskios v. Gaston,* D.C.Mun.App., 121 A.2d 722 (1956); *Tatum v. United States,* 101 U.S.App.D.C. 373, 249 F.2d 129 (1957) *cert. denied,* 356 U.S. 943, 78 S.Ct. 788, 2 L.Ed. 2d 818 (1958).

■ The actuality is, however, that the contents of the transcript did not constitute the observation or firsthand factual knowledge of Officer Reeder, the witness whose recollection it assertedly represented. Rather, the transcript recorded an unsworn, extrajudicial account given by the complaining witness concerning the incident. During the government's case, Officer Reeder was simply used as a conduit to bring that hearsay statement before the jury without demonstrating that it qualified under any of the exceptions to the hearsay rule.

■ Furthermore, the procedure used was incompatible with the general purpose of the Jencks Act [10] which is to allow a defendant access to prior statements of government witnesses for impeachment purposes, *Hardy v. United States,* D.C. App., 316 A.2d 867 (1974), not to permit the government to buttress its case-in-chief, as was done here. Specifically, we believe that the use of the transcript in the manner permitted below violates the

. . . well known rule of evidence, applicable in criminal and civil cases alike, that prior consistent statements may not be used to support one's own unimpeached witness. The Jencks Act gives the defendant the unqualified right to inspect prior statements of Government witnesses made to Government agents and relating to the subject matter of their testimony, but it does not abrogate this time-honored common law evidence rule. *No one would seriously argue that the Government could formally introduce Jencks Act statements in support of its own unimpeached witness.* [*Johnson v. United States,* 121 U.S.App. D.C. 19, 21–22, 347 F.2d 803, 805–06 (1965) (footnote omitted) (emphasis added).[11] ]

Here, the government was permitted to have read before the jury an extrajudicial statement of the complaining witness who had already testified. The document was the statement of the complaining witness and not the police officer who merely recorded it before trial and repeated it at trial. It was not the officer's "past recollection recorded."

■ On the record before us, this error was not harmless. The reading of the inadmissible statement by the police officer bolstered strongly what could reasonably be viewed as an otherwise marginal case from the government's standpoint. It resulted in adding the weight of the police officer's status to the complainant's testimony. Because of the major significance of this error in the trial, we must reverse.

*Reversed and remanded for a new trial.*

---

note omitted). *See generally,* 3 J. Wigmore, Evidence §§ 725–765 (Chadbourn rev. 1970).]

10. 18 U.S.C. § 3500 (1970). As we have indicated, it was because of the requirements of the Jencks Act that the trial judge originally ordered a transcript of the statement, to be

prepared and furnished to counsel. *See* text accompanying footnote 6, *supra.*

11. *See, also, e. g., Coltrane v. United States,* 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969); *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185 (1966).