**David R. REED, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–1058.**

District of Columbia Court of Appeals.

Argued April 7, 1982.

Decided Nov. 10, 1982.

Elizabeth J. Branda, Public Defender Service, with whom William J. Mertens,

Public Defender Service, Washington, D.C., was on briefs, for appellant.

Evelyn E. Crawford Queen, Asst. U.S. Atty., with whom Charles F.C. Ruff, U.S. Atty. at the time the brief was filed, John A. Terry, Asst. U.S. Atty. at the time the case was argued, and John R. Fisher, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before KELLY, NEBEKER, and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant was convicted following a jury trial of second-degree murder while armed, D.C.Code 1981, §§ 22–501, –3202, assault with intent to kill while armed, *id.* §§ 22–501, –3202, and carrying a pistol without a license, *id.* § 22–3204. He appeals, asserting that the trial court erred in: (1) curtailing cross-examination of a government witness concerning the witness' prior arrests; (2) permitting the government to impeach its own witnesses with their prior inconsistent statements, and (3) permitting the government to rehabilitate a witness with his prior consistent statements. We hold that the court did not err either in limiting cross-examination of the government witness or in permitting the government to introduce its witness' prior inconsistent statements. We conclude that the government witness' prior consistent statements were inadmissible to rehabilitate the witness, but that the trial court ruled correctly that any error in their admission was harmless. Accordingly, we affirm.

Appellant was convicted of killing David Thurston, Jr., and wounding Matthew Crockett on October 20, 1977, following a dice game in the Brentwood Shopping Center. Crockett and a companion, Andre Noble, shot dice with appellant and others in the parking lot of the shopping center. After they lost all their money in the game, Crockett and Noble left the shopping center with David Thurston, who had not joined

the game. They were followed by appellant and several unidentified persons. As David Thurston was entering his car, appellant demanded to check him to see if he had any money. When Thurston refused, appellant shot him and Crockett. Noble fled unhurt.

A short time after the shooting, Noble returned to the scene and drove David Thurston to a hospital where Thurston died. Noble then went to the home of Thurston's family and advised them of the shooting. David Thurston's younger brother, Michael Thurston, joined Noble and the two men returned to the shopping center in David Thurston's car. There they were stopped and questioned by police officers. A sawed-off rifle and a pistol were found in the car, and both men were arrested for illegal possession of firearms.

Following their arrest, Noble and Michael Thurston were questioned by Detective Norman Brooks at the Metropolitan Police Department Homicide Division. In their statements to Detective Brooks, both men denied any knowledge of the weapons found in David Thurston's car. Several hours later, however, Noble stated to Detective William Wood that he and Michael Thurston obtained the weapons after David Thurston was shot, and that they were in search of David Thurston's assailant when they were arrested. Following Noble's statement to Detective Wood acknowledging possession of the weapons, charges against Noble and Michael Thurston were dropped.

Noble and Crockett testified at trial that appellant followed them from the shopping center and shot both David Thurston and Crockett. Both men made out-of-court and in-court identifications of appellant.[1]

Several days after the shooting, appellant, who was on parole, left the jurisdiction and went to Texas where he lived under an assumed name until his arrest in October 1978.

---

[1] Noble and Crockett identified appellant in a line-up in November 1978. Crockett initially identified a person other than appellant in a photo identification conducted when Crockett was hospitalized. He subsequently picked appellant's picture from a different photo array.

It was the defense theory that David Thurston and Crockett were shot by Noble. Appellant testified on his own behalf. He stated that as he and his companions were leaving the shopping center after the dice game, they were followed by David Thurston, Noble and Crockett. When Noble pulled a pistol from under his jacket, appellant fled. As he ran, he heard shots. A defense witness testified that he observed appellant being followed by three men as appellant left the shopping center. Two other defense witnesses testified that they heard what one described as shots and the other described as a loud noise at the same time that they saw appellant running away from the shopping center. One of the latter witnesses was appellant's sister.

The government presented evidence that neither of the weapons found in Noble's and Michael Thurston's possession fired the bullets recovered from David Thurston's body.[2] The bullets removed from Crockett were discarded by the hospital where he was treated for gunshot wounds; thus it could not be determined if the same weapon was used in the shooting of both men. Evidence was adduced that the size of the bullets removed from Crockett was consistent with their being the same caliber as the bullets recovered from Thurston's body. The murder weapon was not recovered.

I

We address first appellant's contention that the trial court erred in restricting defense cross-examination of Crockett. Crockett had been arrested a total of four times between the date of David Thurston's shooting and the date of appellant's trial. Over appellant's objection the trial court granted the government's motion to preclude cross-examination of Crockett concerning the three arrests with respect to which charges were no longer pending.

■ Appellant and the government had stipulated to the nature of the charges which had been brought against Crockett and to the reasons the charges were dismissed. A burglary charge was dismissed when the trial court made a finding of no probable cause; a robbery charge was dismissed when the victim refused to prosecute, and a homicide charge was dismissed after the medical examiner ruled that the victim's death was accidental. Appellant contends that the court's ruling violated his Sixth Amendment right to confrontation of witnesses against him. We disagree.

■ An accused's right to confrontation of the witnesses against him is a fundamental right guaranteed by the Sixth Amendment. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). Central to this fundamental right is the opportunity to cross-examine the government's witnesses. *Id.* at 315–16, 94 S.Ct. at 1109–1110; *Springer v. United States,* D.C.App., 388 A.2d 846, 854 (1978). The exposure of a witness' bias or partiality is an important function of the constitutionally-protected right of cross-examination, and we have recognized that "bias is always a proper subject of cross-examination." *Id.* at 855 (quoting *Hyman v. United States,* D.C.App., 342 A.2d 43, 44 (1975)). While an accused's right to cross-examine adverse witnesses is constitutionally protected, it is not without limits. Once there has been cross-examination sufficient to satisfy the requirements of the Sixth Amendment, the trial court has discretion to control the scope and extent of cross-examination. *See Smith v. United States,* D.C.App., 392 A.2d 990, 991 (1978); *Springer v. United States, supra* at 856; *Flecher v. United States,* D.C.App., 358 A.2d 322, *cert. denied,* 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976).

In *Springer v. United States, supra,* we set forth the analysis to be employed in determining if a limitation of cross-examination constitutes reversible error in a criminal case:

Where the record reflects a curtailment. of a requested line of bias cross-examina-

---

2. Thurston was shot with .38 caliber bullets. One of the weapons recovered was an inoperable sawed-off .22 caliber rifle. The other weap-

on was a .38 caliber Colt revolver. Ballistics tests indicated that the bullets recovered from Thurston's body were not fired from the Colt.

tion *in limine,* so that the jury is unable properly to perform its fact-finding function in inferring bias from the testimony as a whole, we will assess cross-examination errors by a per se error standard. If, however, the trial court has permitted *some* cross-examination so that the jury has sufficient information from which to infer bias (should it so choose), this court will evaluate error by application of the harmless constitutional error test of *Chapman v. California, supra* [386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]. To hold harmless such error in curtailing constitutionally-protected cross-examination, it must be clear beyond a reasonable doubt " . . . that the defendant would have been convicted without the witness' testimony . . . ."

Where we determine that a degree of cross-examination consistent with the Sixth Amendment has been allowed, our appellate review will focus on the scope of the cross-examination allowed, and the trial court's determination will stand unless an abuse of discretion mandating reversal is shown. [*Id.* at 856 (emphasis in original) (citations and footnote omitted).]

Application of the above analysis to the facts of the instant case leads to the conclusion that the trial court did not commit error in limiting cross-examination of Matthew Crockett.

First, an error per se standard of review is not applicable. Contrary to appellant's assertion, there was not a complete curtailment of a requested line of cross-examination *in limine.* The trial court permitted cross-examination with respect to burglary charges then pending against the witness, and appellant's trial counsel also cross-examined Crockett concerning an expectation of favorable treatment by the government in exchange for his testimony against appellant.

Second, we conclude that there was no constitutional requirement that appellant be allowed to cross-examine Crockett concerning the dismissed charges in the complete absence of any showing either that the charges were dismissed because of any initiative on the part of the government, or that Crockett had reason to believe that such was the case. We are unpersuaded by appellant's argument that the dismissal of charges evidenced a relationship between Crockett and the government which would permit Crockett to believe that the still pending charge would be dropped if he testified favorably for the government. Appellant concedes that the charges in question were not dismissed at the instance of the particular prosecutor involved in pursuing the charges against appellant. As stated above, they were dismissed, respectively, because of the trial court's finding of no probable cause, a victim's refusal to prosecute, and a medical examiner's finding of accidental death. It would be speculation to attribute a contrary belief to the witness.

The authorities cited by appellant do not support his contention that the Sixth Amendment generally is held to require that cross-examination of a government witness concerning the witness' prior arrests must be permitted in all cases. Rather, courts have held that cross-examination must be permitted when charges are pending against the witness, or the witness otherwise has a present liberty interest before the court system, or when there are other special circumstances that render an arrest relevant to possible pro-government bias. *See, e.g., Davis v. Alaska, supra* (witness' status as a juvenile probationer); *Alford v. United States,* 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931) (witness incarcerated); *Coligan v. United States,* D.C. App., 434 A.2d 483, 485 (1981) (charges pending against witness); *Springer v. United States, supra* (witness' status as a government informant); *Rhodes v. United States,* D.C.App., 354 A.2d 863, 865 (1976) (same); *United States v. Leonard,* 161 U.S. App.D.C. 36, 45, 494 F.2d 955, 964 (1974) (same); *United States v. Alvarez-Lopez,* 559 F.2d 1155, 1156 (9th Cir.1977) (witness' prior arrest for smuggling heroin when witness, a government informant in a narcotics prosecution, denied his own involvement in narcotics); *United States v. Masino,* 275

F.2d 129, 132 (2d Cir.1960) (intervention of prosecutor in having charges against witness dropped).

■ Having determined that the degree of cross-examination permitted was consistent with the Sixth Amendment, we next consider if the court's ruling constituted an abuse of discretion. The trial court. has broad discretion in regulating the extent and scope of cross-examination of witnesses with respect to bias. *Flecher v. United States, supra* at 323. In permitting cross-examination of Crockett concerning the burglary charge then pending against him, the court permitted sufficient cross-examination to place before the jury the issue of whether Crockett's testimony was motivated by a wish to curry favor with the government. The court's restriction of further cross-examination designed to probe the same potential bias was based upon a determination that any probative value of the evidence elicited would be outweighed by its prejudice to the government. The trial court's stated reason for its ruling was valid and had factual predicate in the record. Accordingly, we find no abuse of discretion. *See Johnson v. United States,* D.C. App., 398 A.2d 354, 364 (1979).

■ Appellant further contends that he should have been permitted to impeach Crockett's general credibility with prior arrests. D.C.Code 1981, § 14–305 provides for impeachment of a witness' credibility with prior convictions; there is no provision for impeachment with arrests not culminating in convictions.[3] The use of prior arrests for the purpose of impeachment is limited to those situations in which the arrests are relevant to issues apart from general credibility, *e.g.,* reputation and bias. *Coligan v. United States, supra* at 485. *Kitchen v. United States,* 95 U.S.App.D.C. 277, 221

F.2d 832 (1955), does not hold to the contrary. In *Kitchen,* the United States Court of Appeals for the District of Columbia Circuit held that, had the issue been placed properly before the trial court, it would have had the discretion to allow cross-examination of a prosecution witness concerning a prior arrest which did not result in an impeachable conviction where the underlying incident bore "directly upon the veracity of the witness with respect to an issue in the trial." *Id.* at 279, 221 F.2d at 834.[4] *Kitchen* does not stand for the proposition that prior arrests may be used to impeach a witness' general credibility. We hold that the court did not commit error in limiting defense cross-examination of the government's witness.

## II

Appellant's remaining claims of error concern the government's use of the out-of-court statements of two government witnesses, Andre Noble and Michael Thurston. During direct examination of both witnesses, the prosecutor, over appellant's objections, elicited from the witnesses that after their arrests they initially denied to Detective Brooks that they had any knowledge of the weapons found in the car in which they had been riding. The witnesses stated that they lied because they were afraid of being prosecuted on weapons charges. During direct examination of Noble, the prosecutor elicited also that Noble made a later statement to Detective Wood which was consistent with Noble's trial testimony acknowledging possession of the weapons.[5] When the prosecutor attempted to question the witness concerning another consistent out-of-court statement, the trial court sustained appellant's objection and warned the prosecutor that he would not be permitted to use

---

3. An identical provision contained in D.C.Code 1973, § 14–305 was in effect at the time of appellant's trial.

4. The prosecution witness had made a false report of a robbery concerning money he in fact had lost gambling. In the case in which he testified for the government, the witness notified the police after he found the homicide victim. It was the defense theory that the

witness himself may have committed the homicide. The witness' previous false report of a crime on an earlier occasion thus had a direct bearing on the credibility of his testimony implicating the defendant.

5. Detective Wood also testified concerning Noble's statement to him.

prior consistent statements to rehabilitate his witnesses before they had been cross-examined.

On cross-examination, Noble was impeached with a portion of his grand jury testimony concerning the number of persons with appellant when David Thurston was shot. He was also impeached with his statement to Detective Brooks denying possession of the weapons. On redirect examination, the prosecutor introduced Noble's statement to Detective Wood, and the portion of his grand jury testimony in which Noble claimed that he and Michael Thurston obtained the weapons after David Thurston was shot.

Appellant's trial counsel did not object to the introduction of the statements, but after the evidence was elicited, moved the court to strike it, explaining that he "had been asleep at the switch" in failing to object to its admission. The court denied the motion to strike on the ground that the prior consistent statements were admissible to rehabilitate the witness after he had been impeached with a prior inconsistent statement concerning the weapons and, additionally, in the case of the grand jury testimony, because the defense had impeached the witness with a portion of the same testimony. Appellant alleges that the court erred in permitting the government to impeach its own witnesses by introducing evidence of their prior inconsistent statements during direct examination and in permitting it to rehabilitate Noble with prior consistent out-of-court statements.

■ We address first the issue of the prior inconsistent statements. Appellant alleges that the government impeached its own witnesses in contravention of D.C.Code 1981, § 14–102 which prohibits a party's impeaching his own witness except upon a claim of surprise and prejudice. *See Scott v. United States,* D.C.App., 412 A.2d 364 (1980). We do not agree. The government's admitted purpose in eliciting on direct examination of its witnesses that they had made statements inconsistent with

their trial testimony was to "take the sting out" of anticipated impeachment of the witnesses by the defense.

We have stated that any party is entitled "to bring out on direct examination damaging information about ... his witness," *Kitt v. United States,* D.C.App., 379 A.2d 973, 975 (1977), and that the eliciting of a witness' prior convictions on direct examination does not constitute impeachment of the witness, but rather is an effort to enhance the witness' credibility. *Id.* at n. 2. *See also Middleton v. United States,* D.C. App., 401 A.2d 109, 125 (1979); *Dyson v. United States,* D.C.App., 450 A.2d 432 at 442 (1982). The same reasoning is applicable to a party's eliciting its own witness' prior inconsistent statements. The rule against impeachment of one's own witness forbids an attack on the credibility of the witness; the rule is not violated by the eliciting of evidence adverse to the witness' credibility as a matter of strategy. *See* 3A WIGMORE, EVIDENCE § 903 at 669 (Chadbourn Rev. 1974).

■ While the government was free to elicit Noble's and Michael Thurston's prior inconsistent statements on direct examination for tactical reasons, it was not free to use the inconsistent statements as the basis for the introduction of prior consistent statements in direct examination. Prior consistent statements may not be used to bolster an unimpeached witness. *Johnson v. United States,* D.C.App., 434 A.2d 415, 420 (1981); *Rease v. United States,* D.C. App., 403 A.2d 322, 327 (1979); *Tibbs v. United States,* D.C.App., 359 A.2d 13, 16 (1976). The prohibition against bolstering one's own witness with his prior consistent statements cannot be circumvented by first eliciting the witness' inconsistent statement and then "rehabilitating" the witness with a prior consistent statement. *United States v. Smith,* 160 U.S.App.D.C. 221, 224–25, 490 F.2d 789, 792–93 (1974). *See also Warren v. United States,* D.C.App., 436 A.2d 821, 837 (1981).[6]

---

**6.** The rationale of these decisions is in accord with the holdings of the Second Circuit that the

government may elicit from its witnesses information tending to show the witness' pro-

It is apparent that the prosecutor attempted just such a maneuver in the instant case. After eliciting from Noble that he had made an out-of-court statement which was inconsistent with his trial testimony, the prosecutor asked him about a later consistent statement made to a police officer, and was attempting to question him concerning another consistent statement made to the grand jury when the court sustained appellant's objection.

■ The same statements to which appellant objected during direct examination of Noble were admitted on redirect examination without objection. We conclude that the admission into evidence of Noble's prior consistent statements on both direct and redirect examination was error. The statements were inadmissible to rehabilitate the government's witness. After the jury had heard them, defense counsel moved they be stricken. In a subsequent colloquy at the bench, the trial judge indicated that he viewed any error in their admission as harmless. We agree.

■ As a general rule, prior statements consistent with a witness' trial testimony are inadmissible on the theory that "mere repetition does not imply veracity." *Warren v. United States, supra* at 837; *Scott v. United States, supra* at 373; *Rease v. United States, supra* at 327 (quoting *Coltrane v. United States*, 135 U.S.App.D.C. 295, 304, 418 F.2d 1131, 1140 (1969)). However, in at least two "exceptional situations" a witness' prior consistent statements

may be introduced to rehabilitate: (1) where the witness has been impeached with a portion of a statement and the rest of the statement contains relevant information that could be used to meet the force of the impeachment, and (2) where there is a charge of recent fabrication. *See Warren v. United States, supra* at 837; *see also Scott v. United States, supra* at 373; *Rease v. United States, supra* at 327–28.[7]

The admission of Noble's statements to Detective Wood and to the grand jury cannot be justified under any recognized exception. The first exception is relevant here only to the grand jury testimony. The defense impeached Noble with his grand jury testimony solely on the issue of how many persons were present when David Thurston was shot. The government's introduction of other portions of the grand jury testimony concerning when Noble and Michael Thurston obtained the weapons found in their possession cannot be considered as meeting the force of the impeachment, but rather must be seen as an effort to bolster Noble's credibility on an unrelated issue.

■ Neither the grand jury testimony nor the statement to Detective Wood is admissible on the basis that it rebutted a charge of recent fabrication. To be admissible under this exception a statement consistent with the witness' trial testimony must have been made at a time when the witness did not have a motive to fabricate. *See Johnson v. United States, supra* at 421;

government bias in order to avoid the inference that the government is hiding something from the jury, but that the government may not "exploit" the opportunity to do so. *See, e.g., United States v. Edwards*, 631 F.2d 1049 (2d Cir.1980) (agreement between witness and government); *United States v. DiFrancesco*, 604 F.2d 769 (2d Cir.), *rev'd on other grounds*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (witness' participation in witness protection program); *United States v. Blackwood*, 456 F.2d 526 (2d Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972) (witness awaiting sentencing following guilty plea); *United States v. Del Purgatorio*, 411 F.2d 84, 87 (2d Cir.1969) (witness' criminal record).

7. It is acknowledged that it has not always been clear whether impeachment by prior inconsistent statements opens the door generally to the use of prior consistent statements in support of the witness. A review of the precedents shows it does not. In *Scott v. United States, supra* at 372–73, we noted that jurisdictions are divided on this point, but followed the holding of the United States Court of Appeals for the District of Columbia Circuit in *Coltrane, supra*, by requiring that "exceptional circumstances" justify such use of prior consistent statements. We also noted in *Scott* that we had reaffirmed *Coltrane* in *Rease v. United States. Id.* at 327–28. While we used somewhat broader language in *Johnson v. United States, supra* at 420, our holding in that case was consistent with *Scott* and *Rease*.

*United States v. Sampol,* 204 U.S.App.D.C. 349, 398–402, 636 F.2d 621, 670–74 (1980); *Copes v. United States,* 120 U.S.App.D.C. 234, 236, 345 F.2d 723, 725 (1964).[8]

Noble's statements at issue here—that he obtained the weapons found in his possession after David Thurston was killed—were made to a homicide detective at a time when Noble was under arrest for possession of the weapons and also was a suspect in the homicide investigation and to the grand jury investigating David Thurston's death. The weapons charges that were dropped after Noble explained that he obtained the weapons after the shooting could have been reinstated at any time. Under these circumstances, it is not difficult to imagine Noble's motive to fabricate a statement absolving himself of liability in the shooting and making himself a valuable government witness.

The government argues that appellant suffered no prejudice from the admission of Noble's prior consistent statements admitting possession of the weapons since it was the defense position that Noble was armed on the night David Thurston was killed. It was, however, the defense theory that Noble was armed *at the time* David Thurston was killed, and the admission of Noble's out-of-court statements which supported his trial testimony that he obtained the weapons *only after* the shooting contradicted the defense case. Moreover, the government's argument that the consistent statements did not present any evidence that the jury had not heard already on direct examination of the witness misses the point. By definition, consistent statements do not present new evidence; they are relevant only to credibility. The statements were potentially prejudicial to appellant precisely because they reinforced the credibility of the government's witness. Thus, the trial court's instruction to the jury that the consistent statements were not substantive evidence did not cure the prejudice to appellant.

We conclude, however, that the prejudice to appellant was not so substantial as to require reversal of his conviction. There was ample indication of the truthfulness of Noble's testimony, apart from the out-of-court statements, to enable the jury reasonably to have found him a credible witness. His testimony concerning the shooting was consistent with that of the other eyewitness, Crockett, and his testimony concerning the weapons found in his and Michael Thurston's possession was consistent with that of Michael Thurston. Noble's testimony was contradicted chiefly by that of appellant, who was impeached with numerous prior convictions. Moreover, the government introduced evidence that appellant fled the jurisdiction and lived under an assumed name following the shooting, and that the weapons found in Noble's possession could not have been used to kill David Thurston.

Finally, we must consider the nature of the error complained of. The trial court was not asked to rule that the prior consistent statements were inadmissible; the requested motion was to strike the statements as evidence after the jury already had heard them without objection. Realistically, one may doubt the efficacy of an instruction to the jurors to ignore what they have heard under these circumstances. We conclude, therefore, that the trial court ruled correctly that any error in the admission of the prior consistent statements was harmless. Accordingly, the conviction is

*Affirmed.*

---

8. While there is authority that such statements must have been made before the motive to fabricate arose, *see, e.g.,* McCormick, Evidence § 49, at 106 n. 93 (2d ed. 1972) there is no such per se rule in this jurisdiction. Rather, the test is whether under all the circumstances, the declarant can be considered to have had a motive to lie at the time he made the statements. *See, e.g., Johnson v. United States, supra* at 421; *Sampol v. United States, supra* 204 U.S. App.D.C. at 402, 636 F.2d at 674.