Tyrone L. ELDRIDGE, Appellant,

v.

UNITED STATES, Appellee.

No. 84–536.

District of Columbia Court of Appeals.
Submitted April 25, 1985.
Decided May 24, 1985.

William T. Morrison, Washington, D.C., appointed by this court, was on brief for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Jerry S. Goren, and John M. Facciola, Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before NEBEKER, FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

After a non-jury trial, appellant was convicted of second-degree burglary while armed, first-degree theft, destruction of property, carrying a dangerous weapon, and bail jumping. On appeal he challenges only his conviction of first-degree theft, contending that the value of the stolen property was established by inadmissible hearsay evidence. We agree that the only competent evidence of value, a memorandum prepared by the security manager of the burglarized store, was patent hearsay. The record shows, however, that appellant failed to object to its admission; thus we hold that it was properly considered by the court as trier of fact. Since the memorandum was sufficient to prove that the value of the stolen items was at least $250, which is the amount that divides first-degree from second-degree theft, D.C.Code § 22–3812(a) (1984 Supp.), we affirm the conviction.

I

Appellant was arrested after emerging from a Sears, Roebuck store through a second-story window at 3:45 a.m.[1] After the arrest, the store's security manager, Larry Hopson, conducted an inspection of the store. In the television department he

---

1. The police were present in response to a burglar alarm which indicated the presence of an intruder.

discovered that a television set had been removed from a display stand and that two video cassette recorders (VCRs) were missing. He found one of them in the camera department wrapped in a Sears shower curtain and tied up in a garment bag. The other VCR was outside on the roof, next to the window through which appellant had made his exit. In the auto parts department, just inside that window, Mr. Hopson also found "four or five" cameras and some camera straps in a Sears camera bag. The door to a display case in the camera department was broken, and the air conditioner in the window, the window itself, and the venetian blind on the window were all damaged, as was the VCR on the roof.

To establish the value of the stolen items, Mr. Hopson testified that he had seen the merchandise in the store and that the cameras "ran $110 to $115, somewhere in that neighborhood," and the VCRs retailed for "about $469, I think." Because he did not remember the exact prices, he was shown a memorandum which he had prepared. He had asked the managers of the television and camera departments for the prices, written down what they had told him, and then typed that information in the memorandum. When the memorandum failed to refresh Mr. Hopson's memory, it was proffered by the government as a past recollection recorded.

The proffer was made on the afternoon of the first day of trial, which was a Friday. The court, expressing some doubt about its admissibility, instructed counsel to think about the matter over the weekend and to be prepared to discuss the question of admissibility on Monday morning. When Monday came, however, everyone had apparently forgotten about the issue, and the memorandum was admitted as past

recollection recorded, without objection from appellant.

On appeal, appellant claims that the memorandum was hearsay, that it did not fall within any exception to the hearsay rule, and that its admission therefore was reversible error. The government concedes that the memorandum was hearsay but contends that, in the absence of an objection, the trial court could properly give it whatever probative value it would otherwise be entitled to receive.

## II

■ This is the first case to come before this court presenting a challenge to the sufficiency of the government's proof of value under the new theft statute. In 1982 the former statutes proscribing grand larceny, petit larceny, embezzlement, false pretenses, forgery, unauthorized use of a vehicle, receiving stolen property, and related offenses were all repealed, to be superseded by the District Court of Columbia Theft and White Collar Crimes Act of 1982, D.C.Law 4–164, 29 D.C.Reg. 3976. First-degree theft under the new Act is roughly equivalent to the former statutory offense of grand larceny.[2]

■ There is a significant body of case law in the District of Columbia on the requirements for proving value in grand larceny prosecutions. E.g., Malloy v. United States, 483 A.2d 678, 680–681 (D.C. 1984); Moore v. United States, 388 A.2d 889 (D.C.1978); Williams v. United States, 376 A.2d 442 (D.C.1977); Wilson v. United States, 358 A.2d 324 (D.C.1976); Boone v. United States, 296 A.2d 449 (D.C.1972); United States v. Thweatt, 140 U.S.App. D.C. 120, 433 F.2d 1226 (1970).[3] We see no reason to abandon those precedents and

2. The main difference between the two statutes is that grand larceny was defined as the felonious taking of property "of the amount or value of $100 or upward," D.C.Code § 22–2201 (1981), whereas first-degree theft is the theft of property of a value of "$250 or more." D.C.Code § 22–3812(a) (1984 Supp.). The definition of theft in the new Act also includes conduct previously characterized as embezzlement, false pretenses,

and larceny after trust. See D.C.Code § 22–3811(a) (1984 Supp.).

3. See also Nichols v. United States, 343 A.2d 336, 341–343 (D.C.1975) (proof of value under malicious destruction of property statute, D.C.Code § 22–403 (1981)).

start afresh simply because the offense has a new name, since the value of the stolen property is an essential element of the crime to be proved under both the old statute and the new one. We therefore adopt *in toto*, for first-degree theft cases, the proof requirements on the issue of value established in the series of grand larceny cases beginning with *Thweatt*. We also adhere to the rule that value in this context means the fair market value of the property. *Williams v. United States, supra*, 376 A.2d at 444; *In re R.D.J.*, 348 A.2d 301, 304 (D.C.1975).

### III

At the outset we reject the government's argument that Mr. Hopson's direct testimony on the issue of value, based on his own daily observations of the price tags, was sufficient to withstand appellant's motion for judgment of acquittal.[4] Most courts have held that the testimony of a security officer is incompetent to prove the value of stolen goods when it is based on the officer's recollection of the prices written on the price tags, because the security officer has no personal knowledge of the pricing system. *E.g., DeBruce v. State*, 461 So.2d 889 (Ala.Crim.App. 1984); *State v. White*, 37 Conn.Sup. 796, 437 A.2d 145 (Conn.Super.1981); *People v. Codding*, 191 Colo. 168, 551 P.2d 192 (1976) (en banc); *State v. Coleman*, 19 Wash.App. 549, 576 P.2d 925 (1978). It has also been regarded as inadmissible hearsay. *Lee v. State*, 264 Ark. 384, 571 S.W.2d 603 (1978). There is some authority, however, for holding such testimony admissible. *Norris v. State*, 475 S.W.2d 553 (Tenn.Crim.App. 1971).

The best explanation of the general rule that the testimony of a security officer is incompetent to prove value appears in *People v. Codding, supra*. In *Codding* the defendant stole two saws and a drill from a department store. The issue before the jury was whether the value of the stolen goods exceeded $100. The only evidence on this point was the testimony of a store detective, based on the price tags, that the value of the items was $133. The court ruled that there was no adequate foundation for the detective's testimony:

> The record does not indicate that the store detective was qualified to testify of her own personal knowledge as to the value of the stolen merchandise. Though she professed that part of her job was to know the price of the more expensive pilferageable [*sic*] goods, she admitted that she was not involved in the pricing of the merchandise, had no access to wholesale or retail price lists, and would not know if the goods were mismarked. As such, she was not qualified to testify concerning the value of goods as would a shop owner or manager.... Her knowledge was gained exclusively from the price tags on the merchandise.

191 Colo. at 169, 551 P.2d at 193 (citation omitted).

The opposing view was presented in *Norris v. State, supra*, which involved the shoplifting of a portable television set. The issue in *Norris* was whether the value of the set exceeded $100. The only evidence of value was the testimony of two security guards that the price marked on the price tag was $109.95. The court affirmed the conviction and explained:

> We hold that in a shoplifting case evidence that merchandise was displayed for regular sale at a marked price representing its retail price is sufficient circumstantial evidence of value, where totally uncontradicted, to support a conviction grounded upon the marked price as its value. That the television set was displayed for sale over a period of time with a certain price tag upon it is not

---

4. The government asserts that even if the memorandum was erroneously admitted, Mr. Hopson had direct knowledge of the value of the stolen items. Thus, the government argues, the memorandum was merely cumulative of Mr. Hopson's testimony, and any error in its admission was harmless.

hearsay, but fact; and is evidence that the tag reflected its retail value.

475 S.W.2d at 555–556.

■ The analysis presented in the *Norris* case strikes us as defective. To be sure, the security guards could testify about their observations of the television set and the price tag for a number of purposes, and their testimony would not constitute hearsay unless it was offered to prove the truth of the matter recorded on the tag. They could testify that the price tag said $109.95, but they could not testify that the value of the television set was $109.95, because the set could have been mismarked and the guards would not have known.[5] They knew what the tag said, but that was not necessarily the value of the television set. Unless it could be shown that the price tag was properly marked, the guards' testimony about the tag was only speculative evidence of the value of the merchandise.

We therefore hold that the testimony of Mr. Hopson, the security officer, insofar as it was based on his observation of the price tags, was incompetent to prove the value of the merchandise to which those tags were attached.

### IV

■ The memorandum prepared by Mr. Hopson was obviously hearsay, as the government concedes. The figures which it contained came exclusively from the managers of the two departments whose merchandise was stolen. Since the memorandum was merely the written record of what those managers had told Mr. Hopson, it was not admissible as *his* past recollection recorded. *Wright v. United States,* 360 A.2d 41 (D.C.1976); *Tibbs v. United States,* 359 A.2d 13, 15–16 (D.C.1976). The managers did not testify, and thus the memorandum was not admissible as *their* past recollection recorded. *Id.* at 16; *see* C. McCORMICK, EVIDENCE § 303, at 868 (3d ed. 1984).

■ The government correctly observes, however, that once hearsay evidence is admitted without objection, it may be properly considered by the trier of fact and given its full probative value. *Wilson v. United States,* 357 A.2d 861, 864 (D.C. 1976); *Bullock v. United States,* 243 A.2d 677, 678–679 (D.C.1968); *United States v. Harris,* 141 U.S.App.D.C. 253, 258, 437 F.2d 686, 691 (1970); *see Dixon v. United States,* 287 A.2d 89, 97 n. 21 (D.C.), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972) (holding that hearsay evidence of value, to which the defendant did not object, was sufficient to sustain a conviction of grand larceny). Thus we must find plain error in order to reverse the conviction,[6] since no objection was made below to the admission of the memorandum; indeed, defense counsel not only failed to object but expressly waived any objection.[7]

■ The admission of the memorandum in this case did not rise to the level of plain error. As the government points out in its brief, the prices of the stolen items "could be quickly checked against the universally available Sears catalogue." Common sense tells us that two VCRs and "four or five" cameras would almost certainly be worth a lot more than $250. The department managers could have testified to exactly what was in the memorandum, and their testimony would have been sufficient to prove value. *Saunders v. United States,* 317 A.2d 867, 868 (D.C.1974). Under the plain error doctrine, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very

---

5. *Cf. State v. Coleman, supra,* 19 Wash.App. at 554, 576 P.2d at 928 ("The merchandise might have been one day from a bargain basement, a sale, or disposal in favor of newer styles ...").

6. *Derrington v. United States,* 488 A.2d 1314, 1337 (D.C.1985); *see Pinkard v. United States,* 99 U.S.App.D.C. 394, 395–396, 240 F.2d 632, 633–634 (1957).

7. Appellant is represented by different counsel on appeal.

fairness and integrity of the trial." *Watts v. United States,* 362 A.2d 706, 709 (D.C. 1976) (en banc). That standard is simply not met here. On this record there is no way for us to conclude that appellant was unfairly convicted of a crime he did not commit.

*Affirmed.*