19 P.3d 752

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Paul Bun Chung SAY, also known as Bun Chung, Defendant–Appellant.**

**No. 22256.**

Intermediate Court of Appeals of Hawai'i.

Nov. 22, 2000.

As Amended March 15, 2001.

John H. Murphy, Lihue, on the briefs, for Defendant–Appellant.

Craig A. De Costa, Deputy Prosecuting Attorney, County of Kaua'i, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court BURNS, C.J.

Defendant–Appellant Paul Bun Chung Say, also known as Bun Chung (Say), appeals the circuit court's January 26, 1999 Judgment, upon a jury verdict, convicting him of Theft in the Second Degree, Hawai'i Revised Statutes (HRS) §§ 708–830 [1] and 708–

---

1. Hawai'i Revised Statutes (HRS) § 708–830 (1993) states in relevant part as follows:

Theft. A person commits theft if the person does any of the following:

(1) Obtains or exerts unauthorized control over property. A person obtains, or exerts control over, the property of another with intent to deprive the other of the property.

(2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

(3) Appropriation of property. A person obtains, or exerts control over, the property of another which the person knows to have been lost or mislaid, or to have been delivered under a mistake as to the nature or amount of the property, the identity of the recipient, or other facts, and, with the intent to deprive the owner of the property, the person fails to take reasonable measures to discover and notify the owner.

. . . .

(8) Shoplifting.

(a) A person conceals or takes possession of the goods or merchandise of any store or retail establishment, with intent to defraud.

(b) A person alters the price tag or other price marking on goods or merchandise of

831(1)(b) [2] and sentencing him to a five-year term of imprisonment with credit for time served. We vacate the January 26, 1999 Judgment and remand with instructions.

Say contends (1) that (a) the court erred when it admitted a security manager's testimony regarding the value of the items taken from the department store and (b) the remaining evidence was insufficient to convict Say because there was no evidence of the value of the items he was charged with taking; and (2) that there is no evidence that Say knew the value of the items he was charged with taking.

The primary issue is whether the testimony of a security manager whose duty is "to detect, resolve, and report any internal, external thefts and security violations[,]" of the price of an item based on "a universal price code that has a brief description of K–Mart's identification along with the price and the cost on it" that he "verified through [K–Mart's] register system" is (a) admissible in evidence and, if so, (b) is it substantial evidence of "the value" of the "property" shoplifted?

## THE CHARGE

The December 17, 1996 Indictment states in relevant part:

*COUNT I:* On or about the 2nd day of October, 1996, in the County of Kauai, State of Hawaii, [Say] did obtain or exert unauthorized control over the property or services of K–Mart Department Store, to wit: fishing rod, lures, hooks, binoculars, a knife and orchids, the value of which exceeds Three Hundred Dollars ($300.00), with intent to deprive said K–Mart Department Store of the property or services, thereby committing the offense of Theft in

the Second Degree in violation of Sections 708–830 and 708–831(1)(b) of the Hawaii Revised Statutes.

. . . .

*COUNT II:* On or about the 27th day of September, 1996, in the County of Kauai, State of Hawaii, [Say] did obtain or exert unauthorized control over the property of K–Mart Department Store, to wit: A dive light and camera film, the value of which is not in excess of $100.00, with the intent to deprive the said K–Mart Department Store, of the property, thereby committing the offense of Theft in the Fourth Degree in violation of Section 708–833(1) of the Hawaii Revised Statutes.

In response to the motion to dismiss Count II "pursuant to the plea agreement between the parties[,]" filed by Plaintiff Appellee State of Hawai'i (State), the court dismissed Count II.

Trial on Count I was held on April 13 and 14, 1998.

## RELEVANT STATUTES AND LEGISLATIVE HISTORY

Hawai'i Rules of Evidence (HRE) Rule 802 (1993) states that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawai'i supreme court, or by statute."

HRE Rule 801(3) (1993) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

HRE Rule 801(1) (1993) defines a "statement" as "(A) an oral or written assertion, or

any store or retail establishment, with intent to defraud.
(c) A person transfers the goods or merchandise of any store or retail establishment from one container to another, with intent to defraud.
The unaltered price or name tag or other marking on goods or merchandise, or duly identified photographs thereof, shall be prima facie evidence of value and ownership of such goods or merchandise. Photographs of the goods or merchandise involved, duly identified in writing by the arresting police

officer as accurately representing such goods or merchandise, shall be deemed competent evidence of the goods or merchandise involved and shall be admissible in any proceedings, hearings, and trials for shoplifting, to the same extent as the goods or merchandise themselves.

2. HRS § 708–831(1)(b) (1993) states as follows: "A person commits the offense of theft in the second degree if the person commits theft: ... [o]f property or services the value of which exceeds $300[.]"

(B) a nonverbal conduct of a person if it is intended by the person as an assertion."

As noted in the 1980 commentary to HRE Rule 801, an "assertion" is a declaration of fact or belief. "It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion," Fed. R.Evid. 801, Advisory Committee's Note.

HRS § 708–830(8) (1993) states, in relevant part, as follows:

The unaltered price or name tag or other marking on goods or merchandise, or duly identified photographs thereof, shall be prima facie evidence of value and ownership of such goods or merchandise. Photographs of the goods or merchandise involved, duly identified in writing by the arresting police officer as accurately representing such goods or merchandise, shall be deemed competent evidence of the goods or merchandise involved and shall be admissible in any proceedings, hearings, and trials for shoplifting, to the same extent as the goods or merchandise themselves.

The legislative history of HRS § 708–830(8) states in relevant part:

The purpose of this bill is to tighten the provisions of the Hawai'i Penal Code respecting shoplifting.

. . . .

This bill as amended also covers the offense of persons changing price tags or containers to defraud the merchant.

Addressing itself to the evidentiary problems that are most frequently met in the prosecution of these cases, the bill as amended retains the concept of the original form of the bill that the price and name tags or markings on the goods should be evidence of its value and ownership.

Additionally, the bill as amended permits photographs of the goods to be used in admission upon appropriate authentication by the arresting police officer, so that the goods themselves need not be impounded as evidence and may be returned to the store.

Hse. Stand. Comm. Rep. No. 651, in 1973 House Journal, at 1062.

FACTS

On October 2, 1996, Patrick Flynn (Flynn), a security manager at K–Mart, observed Say in a K–Mart department store in Lihu'e, Kaua'i, with a shopping cart filled with items from the store. Flynn observed "a fishing pole, a Rubbermaid tote and two flowers in the top basket." Flynn also observed "a receipt on top of the Rubbermaid cart" and that "[t]he fishing pole had a K–Mart bag wrapped around it." Say testified that he had paid for the Rubbermaid container. When Say exited the store with the cart, Flynn stopped Say "and asked him for a receipt for the fishing pole ." After a conversation regarding the merchandise in the cart, Say was escorted by Flynn and David Saunders, an assistant manager, to the back of the store into an office.

Flynn testified in relevant part as follows:

Q. . . . . what are your duties as security manager?

A. I'm to detect, resolve, and report any internal, external thefts and security violations.

. . . .

Q. . . . . did you recover the items [Say] had in the cart and pushed out of the store?

A. [Say] left the shopping cart in the ante-office and we recovered the items that were in the cart.

Q. And what were these items?

A. We had a fishing pole valued at $279.00—

[DEFENSE COUNSEL]: Your Honor, may I object. There was no foundation. He's a security (unintelligible). And also hearsay.

THE COURT: Sustained as to foundation.

BY [STATE]:

Q. Now, just going over what items were recovered.

A. Fishing pole, a large amount of fishing lures, binoculars, a knife, two potted plants.

Q. Were there also other fishing supplies?

A.   There was [sic] two types of fishing lures.

[DEFENSE COUNSEL]: Your Honor, I object as leading.

THE COURT: Overruled.

THE WITNESS: There was [sic] two types of fishing lures.

. . . .

Q.   Showing you what has been marked for identification as Exhibits P–1 and P–2. Do you recognize those photographs?

A.   I took these pictures and I provided them to the police department as evidence of merchandise recovered.

Q.   Okay. And do these photographs fairly and accurately represent the items recovered that [Say] removed from K–Mart store on October 2nd, 1996?

A.   Yes, they do.

Q.   Now, were you able to determine the prices of each item?

A.   Yes. Each item carries a universal price code that has a brief description of K–Mart's identification along with the price and the cost on it. And those are verified through our register system.

Q.   And did you verify these—the prices of each item through the register system?

A.   Yes, I did.

Q.   And this register system is the way you guys keep track of the price as well as the merchandise.

A.   It's our point-of-sale program, yes.

Q.   Okay. And so it's important that the readings in the register system are accurate.

A.   That's correct.

Q.   And when did you check the prices of those items?

A.   Immediately after I filed a police report.

Q.   And what was the price of the rod?

[DEFENSE COUNSEL]: Your Honor, may I object as no foundation. And also hearsay.

THE COURT: Overruled.

BY [STATE]:

Q.   What was the price of the—

A.   The price was $279.99.

Q.   Okay. What were [sic] the price for the orchids?

A.   Believe $8.39 each.

Q.   And how many orchids were there?

A.   Two.

Q.   And the lures?

A.   Two types of lures, 5.99 and 3.99.

Q.   Do you recall how many lures there were?

A.   No sir, I don't.

Q.   Okay. Did you fill out a K Mart loss control information report?

A.   Yes, I did. And on there I put the UPCs and the quantities.

Q.   Okay. And if you saw this report would you be able to—would it refresh your recollection as to how many—

A.   On the amount yes.

. . . .

Q.   Showing you what's been marked as P–3 for identification. You may look at it, and when your memory's been refreshed, if you can look up.

. . . .

Q.   And what—has your memory been refreshed as to how many lures?

A.   Yes, sir.

Q.   How many lures?

A.   There was [sic] 25 lures at 5.99, 11 lures at 3.99, and three hooks, I believe, at 8.39.

Q.   And how much was the binoculars?

A.   Sixty-nine ninety-nine.

Q.   And the knife?

A.   Twenty-nine ninety-nine.

[DEFENSE COUNSEL]: Once again, your Honor, may I have a continuing objection as to hearsay. It's certainly an out-of-court statement offered to prove the truth of the matter—

THE COURT: You have.

BY [STATE]:

Q.   And what was the total value of the items (inaudible)?

A.   I'd have to look at the total dollar amount. Be $623.36.

On April 14, 1998, a jury found Say guilty of Theft in the Second Degree and the court sentenced Say to incarceration for a term of five years.

RELEVANT STANDARDS OF REVIEW

■ Where the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and the appropriate standard for appellate review is the right/wrong standard. *State v. Moore*, 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996) (citing *Kealoha v. County of Hawai'i*, 74 Haw. 308, 319, 844 P.2d 670, 675 (1993)).

Regarding sufficiency of the evidence, the Hawai'i Supreme Court has stated:

[E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998).

DISCUSSION

1.

As noted above, Flynn testified, in relevant part, as follows:

Q. Now, were you able to determine the prices of each item?

A. Yes. Each item carries a universal price code that has a brief description of K–Mart's identification along with the price and the cost on it. And those are verified through our register system.

Q. And did you verify these—the prices of each item through the register system?

A. Yes, I did.

Q. And this register system is the way you guys keep track of the price as well as the merchandise.

A. It's our point-of-sale program, yes.

Q. Okay. And so it's important that the readings in the register system are accurate.

A. That's correct.

Q. And when did you check the prices of those items?

A. Immediately after I filed a police report.

This testimony reasonably can be interpreted in two different ways: (1) "the price" is on "[e]ach item"; or (2) the price is unknown until the "universal price code" on each item is read or interpreted when a person acts to "verify . . . the prices of each item through the register system[.]"

Interpretation (2) is supported by the following:

[I]t has become technologically possible, through computerized checkout systems, for stores to dispense with the conventional system of individually pricing goods.

Thus, in *Purity Supreme, Inc. v. Atty. Gen.*, (1980, Mass.) 1980 Adv Sheets 1349 [380 Mass. 762], 407 N.E.2d 297, 7 A.L.R.4th 771, the court held that a supermarket's use of the Universal Product Code (UPC), a computerized checkout system which necessarily precluded itemized pricing, violated a valid state regulation making it a deceptive and unfit business practice for merchants to fail to individually price items offered for sale. Pointing out that stores might fail to simultaneously change prices in the computer and on the shelves, signs might become obscured or improperly placed, and consumers might not use the provided pencils to self-mark items, the court concluded that the regulation bore a reasonable relationship to the goal of consumer protection. . . .

In the typical computerized checkout system, each item being offered for sale is imprinted with a symbol consisting of a series of short, black lines varying in width, darkness, and density. The coded information identifies the item. At the checkout counter, a special electronic scan "reads" the symbol, and a computer which has been preprogramed with the price of each item causes the special cash register to visually display the item

description and price, and to print out that information on the register tape. Annotation, *Validity, Construction, and Effect of Laws or Regulations Requiring Merchants to Affix Sale Price to Each Item of Consumer Goods,* 7 A.L.R.4th 792, 793 (1981).

The first question is whether the above-quoted evidence is admissible. Assuming interpretation (1) is correct, the evidence permitted by HRS § 708–830(8) would be admissible. However, it was not introduced. Flynn's testimony of what he saw was inadmissible hearsay.

Assuming interpretation (2) is correct, Say contends that "[a]ssuming there was no price tag, only a cryptic coding, the universal price code and the register system are out of court statements offered to prove the matter asserted, i.e., the prices of the items."

Is the price of the item shown on the register a statement (a written assertion) (a written declaration of fact), other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted? The answer is yes. The price of the item shown on the register is a written declaration of fact, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the price. Therefore, it is hearsay not admissible in evidence.

Even assuming the answer to the above question is no, is the evidence of the price of the item shown on the register substantial evidence of the "value" of the item? The answer is no. HRS § 708–830(8) authorizes that proof of "[t]he unaltered price ... on goods or merchandise, or duly identified photographs thereof, shall be prima facie evidence of value ... of such goods or merchandise." However, no statute or precedent authorizes that proof of the price of the item shown on the register after the register reads the bar code on the item shall be prima facie or substantial evidence of the "value" of the item.

The following statement, although it deals with price tags, is relevant: "Most courts have held that the testimony of a security officer is incompetent to prove the value of

stolen goods when it is based on the officer's recollection of the prices written on the price tags, because the security officer has no personal knowledge of the pricing system." *Eldridge v. United States,* 492 A.2d 879, 882 (D.C. Ct. of Appeals, 1985) (citations omitted). This statement is applicable in Universal Product Code situations. It further explains the reason for HRS § 708–830(8). However, although HRS § 708–830(8) may have brought the law up to date with commercial practices in 1973, it appears that subsequent commercial practices have advanced beyond the law.

Excluding the security manager's hearsay testimony regarding the price/value of each item, the State failed to introduce the substantial evidence of the value of the items necessary to support the charged offense of Theft in the Second Degree (shoplifting property of a value exceeding $300). *See* HRS § 708–831 (1999) and *State v. Gaylord,* 78 Hawai'i 127, 136, 890 P.2d 1167, 1176 (1995).

The State argues that

[r]equiring the exact person who programmed the register and/or persons who placed the universal price code on each item to testify would be contrary to common sense. It would make it virtually impossible to prove the value of property in any shoplifting case involving a store which uses this type of system.

The State misunderstands. What is being required is compliance with the Hawai'i Revised Statutes, including the Hawai'i Rules of Evidence, HRS Chapter 626.

### 2.

Although there is no valid evidence of the price, there is substantial evidence that Say knew the price of the items he was charged with stealing. Say testified that he "didn't go over the limit that I had in my pocket. You know, I had enough to cover it." He also testified that he was "debating on getting a pole cuz they're so damn expensive."

### 3.

"[I]f an appellate court determines that the evidence presented at trial was insufficient to support a conviction of a greater offense but sufficient to support a conviction of a lesser included offense, the court may remand for entry of judgment of conviction on the lesser included offense[.]" *State v. Malufau*, 80 Hawai'i 126, 136, 906 P.2d 612, 622 (1995).

In Say's case, the evidence is insufficient to support a conviction of the charged offense of Theft in the Second Degree (exceeds $300) or the lesser included offense of Theft in the Third Degree (exceeds $100), HRS § 708–832 (1993). However, the evidence is sufficient to support a conviction of the lesser included offense of Theft in the Fourth Degree (not in excess of $100), HRS § 708–833 (1993), a petty misdemeanor.

## CONCLUSION

Accordingly, we vacate the January 26, 1999 Judgment and remand with instructions to enter a judgment convicting Defendant–Appellant Paul Bun Chung Say of the petty misdemeanor of Theft in the Fourth Degree, HRS § 708–832 (1993).